PARKSIDE MOBILE ESTATES, etc., et
al., Respondents,

v.

Guy T. LEE, et al., Defendants and Third
Party Plaintiffs, Appellants

v.

CENTRAL OIL INSTALLATION COM-
PANY, Third Party Defendant.

Nos. 47287 and 47298.

Supreme Court of Minnesota.

Aug. 4, 1978.

Baudler, Baudler & Maus, Austin, for appellants.

Larkin, Hoffman, Daly & Lindgren and Robert Junghans, Minneapolis, for respondents.

Heard before ROGOSHESKE, KELLY, and IRVINE, JJ., and considered and decided by the court en banc.

PER CURIAM.

This is a discretionary appeal[1] from an order of the district court granting plaintiffs' motion for a new trial on the issue of damages and denying defendants' alternative motions for judgment notwithstanding the verdict or a new trial on all issues. The action involved a claim for damages for breach of an express warranty contained in a purchase agreement for the sale of a mobile home park. We affirm.

On May 4, 1972, defendants Guy T. Lee and Bettie M. Lee entered into a purchase agreement with Inland Realty, Inc., a real estate corporation wholly owned by plaintiffs Earl Richardson, Richard Mathews, and Thomas Richardson, which is responsible for locating property suitable for investment through the sale of limited partnership interests. Defendants agreed to sell and convey a mobile home park located in Olmsted County for a purchase price of $512,000. The terms of the agreement called for a downpayment of $2,500 and a payment of $145,000 on September 1, 1972, the date set for closing. The remainder of the purchase price was to be paid by the buyer, Inland Realty, Inc., assuming and agreeing to pay the balance due on a contract for deed running in favor of defendants. Attached to the agreement was a rider which contained, inter alia, the following provisions:

"4. *Warranties by Seller*—Seller hereby warrants as follows: The present operation of Parkside Mobile Estates upon the Subject Lands complies in every respect with all applicable zoning, building, licensing, health and subdivision laws, ordinances and regulations of the City of Rochester, County of Olmsted and State of Minnesota. * * * If buyer notifies seller in writing of any violations of any of the foregoing, prior to the date of closing, seller shall take the necessary steps to bring the operation of said Parkside Mobile Estates into compliance with the foregoing. If seller is unable to do so prior to the date of closing, this agreement shall be voidable at the option of buyer.

\* \* \* \* \* \*

"10. *Survival of Warranties*—All covenants and warranties contained herein shall survive the closing of this transaction."

Defendants signed both the purchase agreement and the rider, as did Earl Richardson on behalf of Inland Realty, Inc.

Prior to the signing of the above agreement, plaintiffs Richard Mathews and Thomas Richardson testified that they,

---

1. Rule 105, Rules of Civil Appellate Procedure.

along with Earl Richardson, discussed with defendants their intention to structure the transaction as a limited partnership and that such a partnership would require a securities registration from the Securities Division of the State of Minnesota. Richard Mathews further testified that he informed defendants of their intent because of the time required to obtain a securities registration and that defendants voiced no objections. Defendant Guy Lee testified that neither plaintiffs nor anyone else connected with Inland Realty said anything about purchasing the property for the benefit of a limited partnership.

After the May 4 signing Inland Realty Investments, Inc., instituted a securities registration of a limited partnership in the name of Parkside Mobile Estates, the other named plaintiff in this action. Named as general partners in Parkside Mobile Estates were Inland Realty Investments Inc., and plaintiffs Earl Richardson, Richard Mathews, and Thomas Richardson. Money provided through the sale of limited partnership interests was placed in an escrow account provided by the securities registration.

Also after the May 4 signing but before the September 1 closing date, defendants received a letter from Richard Peter, Public Health Sanitarian for Olmsted County Health Department. The letter stated that recent tests of the private well supplying water to the mobile home park revealed nitrate nitrogen in the water at levels above the natural nitrate nitrogen content for the area. The letter went on to state that such elevated levels of nitrate nitrogen may be of sewage origin, and that the water analysis "indicates that the water is obtained from unsafe geological formations already contaminated through direct or indirect discharge of sewage or other wastes. It is obvious that the [municipal water supply] should be extended to serve all of the trailer court or drilling of a new well must be undertaken."

Upon receipt of Richard Peter's letter, which was dated July 26, 1972, defendant Guy Lee started to get estimates both for hooking up to city water and digging a new well, but didn't follow through on the estimates. On July 19, 1972, plaintiff Earl Richardson, on behalf of Inland Realty, Inc., sent defendants a letter requesting an extension of the closing "due to the delay in the Securities Registration of Parkside Mobile Estates * * *." Defendants agreed to an extension and signed an addendum to the purchase agreement to that effect on July 31, 1972. At no time prior to closing did defendant Guy Lee tell any of the plaintiffs about the subject matter of Richard Peter's letter.

At the September 29, 1972 closing, plaintiffs gave defendants two checks drawn on an Inland Realty, Inc., account as required by the purchase agreement. Defendants in return gave plaintiffs a quit claim deed and an assignment of the contract for deed running in favor of defendants. The documents transferred defendants' ownership interest to plaintiff Parkside Mobile Estates, a limited partnership.[2]

Approximately two weeks after closing plaintiff Earl Richardson was notified by letter from the Olmsted County Health Department that the park's water supply was unsafe. Richardson further testified that plaintiffs changed to the city water supply as a result of the health department's letter at a cost of $19,222.89.

The trial court by special verdict submitted, inter alia, the following questions to the jury:

"(1) Was the water supply unsafe, unsanitary and unpotable when the title was transferred on September 29, 1972, to Parkside Mobile Estates by Lee's?

"(2) Was the purchase agreement of May 4, 1972 assigned to plaintiff Parkside by Inland Realty, Inc.?

"(3) What damage did plaintiff Parkside sustain in connecting to a new source of water as a direct result of a breach of contract?

---

**2.** Plaintiff Richard Mathews testified that Parkside Mobile Estates was not listed as the buyer on the purchase agreement because the part-

nership was not a legal entity at the time the purchase agreement was signed.

The jury answered the first two questions in the affirmative and found that plaintiffs had sustained $3,250 in damages. The trial court ordered judgment in that amount against defendants. Plaintiffs then filed alternative motions for additur or a new trial on the issue of damages only. Defendants filed alternative motions for judgment notwithstanding the verdict or a new trial on all issues. The trial court granted plaintiffs' motion for a new trial on the issue of damages and denied defendants' alternative motions. Defendants appeal from that order.

The issues presented are the following: (1) Whether defendants are entitled to judgment notwithstanding the verdict on the grounds that there was no evidence to support the jury's findings either that the warranty was breached or that the purchase agreement was assigned, or that there was no evidence to support an award of damages in any amount; (2) whether the warranty was actionable; and (3) whether, because of certain alleged errors and irregularities occurring at trial, the trial court erred in failing to grant defendants' motion for a new trial on all issues.

1. The standard for determining the propriety of an order denying judgment notwithstanding the verdict is whether there is any competent evidence reasonably tending to sustain the verdict.[3] *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 232 N.W.2d 236 (1975). In *Seidl* we elaborated on the standard with the following:

"A motion for judgment notwithstanding the verdict admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Unless we are able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand. *Brown v. Arthur Schuster,*

*Inc.*, 300 Minn. 106, 217 N.W.2d 850 (1974)."

Applying this standard to the facts which follow we must conclude that there was sufficient competent evidence to support the jury's finding that the warranty was breached.

The warranty in question warranted, inter alia, that the operation of the mobile home park complied with applicable health laws, ordinances, and regulations of the City of Rochester, County of Olmsted, and the State of Minnesota. The Olmsted County Board of Health by reference adopted the standards promulgated by the Minnesota Department of Health, which requires that, "[a]n adequate supply of water of safe, sanitary and potable quality shall be provided in each mobile home park * * *." Minn.Reg. MHD 187(e). The language of the regulation was the basis for question number (1) of the special verdict form.

The principal evidence bearing on the issue was a letter sent defendants by Richard Peter, Public Health Sanitarian for the Olmsted County Health Department. That letter, after reciting the results of a series of tests showing an abnormal level of nitrate nitrogen in the water, read as follows:

"The water analysis, indicates that the water is obtained from unsafe geological formations already contaminated through direct or indirect discharge of sewage or other wastes."

Peter's trial testimony disclosed that 17 tests of the water of the mobile home park had been performed from January, 1970, through March, 1973. The tests showed a level of nitrate nitrogen in the water ranging from 3.2mg./liter to 5.3mg./liter, the normal level of nitrate nitrogen for water in the area being less then 1 mg./liter. Trial testimony also revealed that a level of nitrate nitrogen in excess of 10 mg./liter causes a disease in human infants less than six months old known as "blue baby disease." Based on these facts Peter opined that the water was unsafe and unsanitary.

---

**3.** The standard for granting a new trial on the ground that the verdict is not justified by the evidence is similarly restrictive. See, *Koenig v. Ludowese*, 308 Minn. 380, 243 N.W.2d 29 (1977).

Defendants argue, however that judgment notwithstanding the verdict is required because Peter's testimony under cross-examination revealed that there was no basis for his opinion and that the water was potable. Defendants' claim is based on Peter's testimony that the elevated levels of nitrate nitrogen were the only basis for his letter and that concentration of nitrate nitrogens are not harmful unless the concentration reaches a level of 10 mg./liter. We think defendants' argument misconceives the scope of the warranty. "Potability" was but one of the guarantees provided by defendants' promise. In addition to being potable, defendants also warranted that the park's water supply was safe and sanitary. The evidence was uncontradicted that the water supply was unsafe and unsanitary. Applying the standard enumerated earlier, we conclude that the jury's verdict on the question of breach of warranty is reasonably supported by the evidence.

■ We also conclude that the jury's determination that the purchase agreement was assigned by Inland Realty, Inc., to plaintiffs is reasonably supported by the evidence. Although defendants argue the fact that Inland Realty, Inc. brought a prior lawsuit to recover damages for breach of the warranty in question "compels the conclusion that there had been no assignment," the jury also had before it evidence that (1) plaintiffs informed defendants prior to the signing of the purchase agreement of their intent to structure the transaction as a limited partnership; (2) the money paid defendants came from the limited partners of Parkside Mobile Estates rather than Inland Realty, Inc.; (3) title was transferred directly from defendants to Parkside Mobile Estates; and (4) Parkside Mobile Estates was the owner of the mobile home park from the date of the closing. Given our limited scope of review to test the validity of a judgment notwithstanding the verdict we must conclude that there was sufficient evidence to allow the jury to infer that the purchase agreement was assigned. See, *Ruberoid v. Glassman Construction Co.*, 248 Md. 97, 234 A.2d 875 (1967). Therefore the evidence does not compel a granting of the motion against the jury's verdict.[4]

■ Finally defendants argue that there was no evidence at trial that would support an award of damages in any amount. Defendants rely on a grammatical construction of a sentence contained in a prospectus issued by Parkside Mobile Estates to support their position that plaintiffs had determined to hook onto the public water supply long before learning about any problem with the water supplied by the well. Defendants' argument is without merit. As noted previously there was evidence in the record from which the jury could have inferred liability. There was also evidence from which the jury could infer that plaintiffs had to obtain a new water supply.[5] Defendants' evidence merely presented a conflict which clearly presented a question for the jury.

■ Alternatively defendants argue that the trial court abused its discretion in granting plaintiffs' motion for a new trial on the issue of damages only on the grounds that, since plaintiffs had ample opportunities to prove their damages, the only inference to be drawn from their failure to do so is that they would have great difficul-

---

4. Defendants further argue that, assuming the purchase agreement had been assigned, such an oral assignment would be within the statute of frauds and of no legal consequence. Defendants' argument is without merit. The statute of frauds is a personal defense. *Royal Realty Co. v. Levin*, 244 Minn. 288, 69 N.W.2d 667 (1955). Since the parties to the assignment are Inland Realty, Inc., and Parkside Mobile Estates, defendants are not in a position to assert the statute of frauds in their favor. *See, Formanek v. Langton*, 271 Minn. 59, 134 N.W.2d 883 (1965).

5. The trial court ruled that the proper measure of damages is "the cost of curing the defect in the water supply, or the expenses incurred in the hook-up to the [municipal] water system." We concur. The cost to cure would not involve substantial economic waste so as to require damages to be measured by the diminution involved caused by the breach. *See, Northern Petro Chemical Co. v. Thorson & Thorsov*, 297 Minn. 118, 211 N.W.2d 159 (1973).

ty in determining the amount of damage. The only evidence introduced by plaintiffs as to the amount of damages was the testimony of Thomas Richardson, who merely read a dollar figure of $19,222.89 from a piece of paper. The jury returned a verdict of $3,250. The trial court ruled:

"Although the record adequately supports the jury's findings on liability, assignment of the contract, and the *existence* of damages, nonetheless the evidence in the record is insufficient to support the jury's findings on the *amount* of damages, and Plaintiffs' Motion for a New Trial on the issue of *damages alone* is granted and all other Motions are denied." (Italics supplied.)

The granting of a new trial on part of the issues is within the discretion of the trial court. See, *Backman v. Fitch,* 272 Minn. 143, 137 N.W.2d 574 (1965). On this record we cannot say that the trial court abused its discretion.

2. Defendants' argument that the warranty was one of law rather than of fact, or one of mixed law and fact, and therefore not actionable, merits little discussion. Defendants warranted that the operation of the mobile home park complied with all applicable health laws. The warranty was not a representation of law but a representation that facts exist which justify the warranty given. *See, Pieh v. Flitton,* 170 Minn. 29, 211 N.W. 964 (1927). The warranty was clearly actionable.

3. Defendants' final argument, that the trial court abused its discretion in denying their motion for a new trial on all issues, is based principally on the inferences that could be argued to the jury concerning the earlier action brought by Inland Realty for breach of the same warranty. Defendants contend that the trial court's refusal to allow their counsel to argue on inference, while overruling defendants' objection to the inferences argued by plaintiffs' counsel, was so prejudicial as to require a new trial. We disagree. The inference sought to be argued by defendants' counsel concerning the motives for bringing the earlier action had no support in the evidence. The infer-

ence argued by plaintiffs' counsel, that the lawsuit had been dismissed because of an assignment, was supported by the evidence. In fact, defense counsel argued to the jury that dismissal of the lawsuit indicated no assignment had been made. Under these circumstances the trial court's rulings were not erroneous. See, *Burns v. Kvernstoen,* 246 Minn. 75, 74 N.W.2d 398 (1955). We have considered defendants' other arguments in support of their motion for a new trial and find them to be without merit.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.