In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2210

LYON FINANCIAL SERVICES, INC.,
d/b/a U.S. Bancorp Business
Equipment Finance Group,

*Plaintiff-Appellant,*

*v.*

ILLINOIS PAPER AND COPIER COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 7064 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 5, 2012 — DECIDED OCTOBER 9, 2013

Before MANION and SYKES, *Circuit Judges*, and DARROW, *District Judge.*[*]

[*] The Honorable Sara L. Darrow, United States District Court for the Central
(continued...)

SYKES, *Circuit Judge*. This appeal presents a question with important implications for commercial transactions: When a representation of law is made in a contract, when (if ever) is it actionable? The question arises in the context of a commercial financing arrangement between Illinois Paper and Copier Company, a seller of office equipment, and Lyon Financial Services, Inc., a finance firm based in Minnesota. Under a master contract signed in October 2008 and governed by Minnesota law, Lyon had a right of first refusal to provide lease financing for Illinois Paper's customers. Under the contract Lyon had the option to purchase office equipment supplied by Illinois Paper and lease the equipment to Illinois Paper's customers who were interested in this form of financing. Illinois Paper expressly warranted in the contract that "all lease transactions presented to [Lyon] for review are valid and fully enforceable agreements."

At issue here is a lease of office equipment to the Village of Bensenville, Illinois. Lyon purchased a copy machine from Illinois Paper and leased it to the Village for a term of six years. Under Illinois law, however, the lease was unenforceable; the Illinois Municipal Code provides that municipal equipment leases may not exceed five years. When the Village stopped paying, Lyon sued Illinois Paper for breach of the contractual warranty. Illinois Paper argued that the warranty was a representation of law, not fact, and as such was not actionable in a suit for breach of contract or warranty. The district court

---

[*] (...continued)

District of Illinois, sitting by designation.

agreed and granted Illinois Paper's motion for judgment on the pleadings.

Because Minnesota law applies, we are called on to predict how the Minnesota Supreme Court would answer the central legal question presented here. We find ourselves genuinely uncertain about the answer. In the tort context, Minnesota courts adhere to the maxim that a person may not rely on another's representation of law, so where reliance is an element of a tort claim (as in cases alleging fraud), representations of law are not actionable. The question has not arisen in the contract setting, however. The Minnesota Supreme Court has not addressed the enforceability of representations of law in contract or warranty law. Furthermore, although federal courts have predicted that reliance would be an element of a breach-of-warranty claim in Minnesota, the Minnesota Supreme Court has not grappled with the issue for more than 60 years, and the prevailing understanding of warranty has since changed. In the absence of more recent controlling precedent, the best course is to ask the state supreme court for a definitive resolution of these important questions of state law. We respectfully certify the questions set forth at the end of this opinion to the Minnesota Supreme Court.

## I. Background

Illinois Paper, a Delaware corporation based in Bolingbrook, Illinois, sells copy machines and other office equipment. Lyon Financial Services, a Minnesota corporation headquartered in Marshall, Minnesota, is a financial-services firm specializing in business-equipment financing. Lyon is a

subsidiary of U.S. Bancorp and does business as U.S. Bancorp Business Equipment Finance Group.

In October 2008 Lyon and Illinois Paper entered into a master agreement providing that Lyon would have the "first right of review" of all of Illinois Paper's "maintenance inclusive transactions" for customers inquiring about lease financing. For a period of 90 days from the date of the contract, Illinois Paper agreed to forward to Lyon any proposed transactions meeting that description and Lyon had the option to provide the financing. In the "Representations and Warranties" section of the agreement, Illinois Paper warranted that "all lease transactions presented [to Lyon] for review are valid and fully enforceable agreements." Any leases financed by Lyon were nonrecourse to Illinois Paper unless Illinois Paper breached the legal enforceability warranty or any of its other warranties in the agreement. Finally, the master contract contains a choice-of-law clause providing that Minnesota law applies.

This case centers on a financing arrangement for office equipment supplied by Illinois Paper to the Village of Bensenville, Illinois, soon after the master contract was executed. It's undisputed that Lyon purchased a copy machine from Illinois Paper and leased it to the Village, but the parties disagree about the precise circumstances under which the transaction was arranged. Lyon insists that the lease agreement was "presented" by Illinois Paper (in the words of the warranty) and was drafted to Illinois Paper's specifications. Illinois Paper contends that the transaction was wholly arranged by Lyon based on its preexisting relationship with the Village. Lyon had financed copier equipment for the Village in the past,

through another supplier. Illinois Paper contends that it was brought in only to sign the master agreement and supply the equipment at issue here. Indeed, the master agreement is a U.S. Bank form contract (recall that Lyon is a subsidiary of U.S. Bancorp).[1]

Either way, it's clear that Lyon purchased the copier the Village wanted for a price of $510,658 and in turn leased it to the Village.[2] The lease agreement—signed a week after the master contract was executed in October 2008—listed the Village as the "customer," Lyon as the "owner" of the copier, and Illinois Paper as the "supplier." The Village was required to make monthly payments of $9,500 for 72 months (six years), and Lyon's remedy for nonpayment was repossession of the equipment.

---

[1] The resolution of this factual dispute is not necessary to decide the legal questions presented. In any case we could not resolve it now; the district court entered judgment on the pleadings. Resolving the factual dispute may be relevant to potential defenses, however. As we have noted, Illinois Paper asserts that it did not "present" the Bensenville lease agreement to Lyon, and thus by the master contract's own terms, the warranty does not apply. Another mystery not relevant at this juncture is whether other lease agreements were presented pursuant to the master contract (or whether such agreements were even contemplated), or instead whether the master contract was executed solely to facilitate the lease to the Village.

[2] Another factual twist is that Illinois Paper apparently paid Lyon approximately $148,200, an amount still owed by the Village to Lyon on a past copier transaction not involving Illinois Paper. This amount was apparently incorporated into the 2008 Village lease price. Again, this aspect of the transaction is not relevant to the legal issue presented here.

In mid-2010—less than two years into the lease—the Village stopped paying, asserting that the lease was unenforceable under the Illinois Municipal Code, which expressly limits municipal equipment leases to no more than five years. *See* 65 ILL. COMP. STAT. 5/11-76-6 (1961). Lyon had no remedy against the Village, so it filed this suit against Illinois Paper for breach of contract. The complaint sought damages for Lyon's lost lease payments—an amount totaling more than $500,000—plus interest, attorney's fees, and costs. Illinois Paper responded with several affirmative defenses and also disputed the claimed amount of damages.[3] It also counterclaimed for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. Finally, Illinois Paper filed a third-party complaint against the Village and the official who signed the lease, alleging fraud and breach of contract.

The district court dismissed Illinois Paper's counterclaims and its third-party complaint with prejudice. That left Lyon's claim for breach of contract, which was based on the warranty in the master contract regarding the enforceability of the lease. Both parties moved for judgment on the pleadings. The district court granted Illinois Paper's motion and denied Lyon's cross-motion. The court acknowledged that the Minnesota choice-of-law clause was likely enforceable but analyzed the claim under Illinois law on the assumption that the two states' laws were materially the same. The court then construed Lyon's claim as

---

[3] Illinois Paper argues that Lyon's calculation double-counts the $148,200 that Illinois Paper paid in satisfaction of the Village's prior debt because that amount was added into the lease amount and not credited back in the damages request.

one for breach of warranty and concluded that Illinois Paper's warranty that the leases were "valid and fully enforceable" was a representation of law. The court explained that reliance is an element of a breach-of-warranty claim under Illinois law, and because no one may reasonably rely on a counterparty's representation of law, the breach-of-warranty claim necessarily failed.

Lyon moved for reconsideration based on the district court's decision to apply Illinois rather than Minnesota law and also challenged the court's decision to treat the alleged breach of contract as a breach of warranty. In the meantime, the district judge assigned to the case died,[4] and the case was administratively transferred to another judge.[5] The new judge denied the motion for reconsideration, but this time considered the arguments under Minnesota law. The judge construed the warranty as a representation of law and held that it was not actionable under either a breach-of-warranty or a breach-of-contract theory. The court also held that the promise of enforceability did not function as a guaranty; although Illinois Paper had agreed to "indemnify and hold [Lyon] harmless from any loss or claim resulting from [Illinois Paper's] breach" of the warranties in the master contract, Illinois Paper had not guaranteed fulfillment of the Village's obligations under the lease agreement. The court entered final judgment in favor of Illinois Paper, and this appeal followed.

---

[4] The Honorable William J. Hibbler died on March 19, 2012.

[5] The case was reassigned to the Honorable Rebecca R. Pallmeyer.

## II. Analysis

We review de novo the district court's decision granting Illinois Paper's motion for judgment on the pleadings, construing the facts and drawing reasonable inferences in favor of Lyon. *See ProLink Holdings Corp. v. Fed. Ins. Co.*, 688 F.3d 828, 830 (7th Cir. 2012). The claim arises solely under state law; the case is in federal court based on diversity of citizenship. *See* 28 U.S.C. § 1332. "When sitting in diversity, 'our task is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now.' " *Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 426 (7th Cir. 2012) (quoting *Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 663 (7th Cir. 2011)).


## A. Minnesota Law Applies

The Lyon-Illinois Paper master contract provides that the "[a]greement and performance hereunder shall be governed by the laws of the State of Minnesota." With exceptions not relevant here, Illinois generally enforces contractual choice-of-law provisions so Minnesota law controls. *See, e.g., Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed."). We must predict, if we can, how the Minnesota Supreme Court would resolve the legal questions presented.

**B. The Warranty Is a Representation of Law**

In the master contract, Illinois Paper warranted that "all lease transactions presented to [Lyon] for review are valid and fully enforceable agreements." The parties dispute whether this is a representation of fact or law. Lyon argues that it is a representation of fact—the fact that legal formalities were satisfied, thus "ensuring the Lease Agreement's enforceability." Illinois Paper contends that the warranty is a representation of law. Why might this classification matter? Representations of fact are generally actionable in tort or contract. But representations of law are not actionable in tort, and the parties disagree about whether they are actionable in contract or warranty. Because the fact/law distinction makes a difference to our decision to certify questions to the Minnesota Supreme Court, we classify the representation now in order to highlight the unsettled nature of the legal issue.[6]

The Minnesota Supreme Court long ago explained that "it is not always easy to classify representations as of law or fact." *Miller v. Osterlund*, 191 N.W. 919, 919 (Minn. 1923). Representations are often mixed, and depending on the circumstances, can be effectively legal or effectively factual. *See id.* ("[C]ourts should not be too indulgent of defendants who have made misrepresentations as to matters of which they should be

---

[6] We note that in the context of mistake, the Minnesota Supreme Court once referred to the fact/law distinction as "useless duffle of an older and more arbitrary day" and explained that it "refuse[s] to consider always controlling the distinction between mistakes of fact and those of law." *Peterson v. First Nat'l Bank*, 203 N.W. 53, 55 (Minn. 1925). We think the current court might consider the distinction relevant in this context.

expected to have knowledge, and of which the other party ordinarily would not have knowledge. A misrepresentation though involving [a] matter of law will be held actionable if it amounts to an implied assertion that facts exist that justify the conclusion of law which is expressed.").

Minnesota courts have reasoned that a representation of legal compliance that is breached by way of a misrepresentation of fact—particularly a fact of which the speaker has better knowledge than the listener—is effectively a representation of fact. *See, e.g.*, *Parkside Mobile Estates v. Lee*, 270 N.W.2d 758 (Minn. 1978) (finding that the seller's warranty that property was in compliance with all relevant regulations when in truth it had contaminated water in violation of the health code was effectively a representation of fact); *JEM Acres, LLC v. Bruno*, 764 N.W.2d 77, 80 (Minn. Ct. App. 2009) (upholding a jury verdict finding breach of contract and fraud where a property seller promised that the property's sewage system was working and in compliance with applicable laws when in fact it had not been recently inspected and was actually seeping sewage); *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 716 N.W.2d 366, 372–74 (Minn. Ct. App. 2006) (finding that the defendants' statement that there wasn't anything to suggest that the plaintiff could pierce the corporate veil implied knowledge of facts and as such was a representation of fact). Generally speaking, representations of fact are actionable in both tort and contract. *See Parkside*, 270 N.W.2d at 763; *Pieh v. Flitton*, 211 N.W. 964, 965 (Minn. 1927); *Miller*, 191 N.W. at 919.

On the other hand, Minnesota courts recognize that pure representations of law can be investigated by either party

simply by reference to legal authority that is a matter of public record rather than requiring knowledge of information in the other party's possession. *See, e.g.*, *Northernaire Prods., Inc. v. County of Crow Wing*, 244 N.W.2d 279, 280 (Minn. 1976) (county officials' statement that no zoning permit was required for holding a concert was representation of law); *see also Pieh*, 211 N.W. at 964 (explaining that a representation as to the legal effect of a document—i.e., that it constitutes a contract—would be a representation of law). Accordingly, representations of law generally are not actionable in tort. *See, e.g.*, *Northernaire*, 244 N.W.2d at 280–82; *Pieh*, 211 N.W. at 964. Reliance is an element in tort actions for fraud or deceit, and "[a] misrepresentation of a matter of law … is not a representation on which the party to whom it has been made has a right to rely, for the law is presumed to be equally within the knowledge of both parties." *Miller*, 191 N.W. at 919; *see also State v. Edwards*, 227 N.W. 495, 495 (Minn. 1929).

The contractual provision at issue here is a mixed representation, but as relevant to this dispute, it is a representation of law. The only significant fact relevant to the alleged breach is the length of the lease term, known to both parties. The remaining relevant question—whether a six-year municipal equipment lease is legally enforceable—is a question of law answerable by reference to the Illinois Municipal Code. The Code provision limiting the length of municipal leases is a public act accessible to all. The parties were thus on equal footing regarding the matter. Lyon could have determined whether the lease complied with the law just as easily as Illinois Paper by checking the Code provision against the plain and obvious facts; it would not need knowledge of information

solely in the possession of Illinois Paper. For purposes of this claim, the warranty is a representation of law.

## C. Is a Representation of Law Enforceable in Contract or Warranty?

That brings us to the key question in this case: Is the contractual warranty actionable even though it is a representation of law? Although this is a settled question in tort law, it is not at all clear that the reasoning behind the nonactionability of legal representations in tort is equally valid as a contract-law principle or that it applies in the breach-of-warranty context.

Lyon's first argument is that it pleaded its claim as a breach of *contract*, not a breach of warranty as the district court analyzed it, and even if a breach-of-warranty claim requires reliance (more on this in a moment), a breach-of-contract claim does not. *See Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974) (listing the elements of a breach-of-contract action as "(a) the formation of the contract; (b) performance by plaintiff of any conditions precedent to his right to demand performance by defendant; and (c) a breach of the contract by defendant" (quotation marks omitted)).[7] Thus, even if the general rule against relying on representations of law is

---

[7] Lyon notes that a breach-of-warranty cause of action usually arises in the sale-of-goods context. Maybe so, but express warranties are "still possible in any kind of transaction," 3 DAN B. DOBBS ET AL., THE LAW OF TORTS § 669, at 661 (2d ed. 2011), and a breach-of-express-warranty theory has been used outside the context of sales of goods, *see, e.g., CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997 (N.Y. 1990).

applicable outside of tort, Lyon insists that its claim can succeed because a breach-of-contract claim does not require reliance.

The district court did not explain why it chose to analyze the claim as a breach of warranty instead of more generally as a simple breach of contract. As an initial matter, there is nothing in particular about the provision at issue that seems to require its treatment as a warranty as opposed to a contract provision like any other. While the representation is labeled a "warranty," that term ordinarily applies where a party agrees to be responsible if a past occurrence or matter outside its control turns out not to be as warranted. *See* RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. d (1981). Here, however, Illinois Paper warranted that *future* lease transactions would be valid and enforceable. Promises like this typically belong in the realm of contract. *See id.* § 2.

It may not make any difference. Illinois Paper contends that the tort dichotomy between representations of law and fact carries over to contract, making contractual representations of law nonactionable, period. For support Illinois Paper relies heavily on the Minnesota Supreme Court's decision in *Parkside Mobile Estates v. Lee*, but we are not convinced that *Parkside* provides clear authority for either party's position. *Parkside* involved a warranty in a contract for the sale of a mobile-home park; the seller warranted that the property complied with all relevant laws. 270 N.W.2d at 759. The Minnesota Supreme Court labeled the warranty a representation of fact and found it actionable. *Id.* at 763. The court did not address whether a representation of law is actionable in contract or warranty—or

whether there is any distinction between the two theo-
ries—because it didn't have to. Rather, by classifying the
representation at issue as one of fact, the court quickly rejected
the seller's argument that the representation was one of law
and thus unenforceable. Moreover, the court cited only a fraud
case and resolved the issue in a few sentences. *Parkside* there-
fore does not give us clear guidance on Minnesota's approach
to the enforceability of representations of law in contract or
warranty. Illinois Paper cites other cases pointing to the
distinction between representations of law and fact, but all
involved claims of fraud—a tort—not contract or warranty
claims. *See, e.g.*, *Pieh*, 211 N.W. at 964 (fraud defense); *Miller*,
191 N.W. at 919 (same).

Illinois Paper also argues that representations of law are
unenforceable in the domain of warranty because Minnesota
law holds that reliance on the truth of a warranty is required
to state a claim for its breach. This argument imports the tort
principle we noted earlier: that no one may justifiably rely on
another's representation of law. Lyon responds that reliance is
not an element of breach of warranty in Minnesota. This legal
dispute actually involves two questions: (1) whether reliance
is an element of a breach-of-warranty claim in Minnesota; and
(2) if so, what type of reliance is necessary: tort-like reliance
(that is, reliance on the substantive truth of the matter war-
ranted) or contract-formation reliance (that is, reliance on the
warranty as a bargained-for part of the agreement as a whole;
in other words, reliance on the other party's promise to take
responsibility if the matter turns out not to be as warranted).
The Minnesota Supreme Court has not had an opportunity to
address these questions.

Illinois Paper's position that breach-of-warranty claims require tort-like reliance is based on a 1944 Minnesota Supreme Court case and a more recent Eighth Circuit opinion predicting Minnesota law. In *Midland Loan Finance Co. v. Madsen*, 14 N.W.2d 475, 481 (1944), the Minnesota Supreme Court explained that "[t]o enable a party relying upon a breach of express or implied warranty to recover, it must be clear and definite that there was actual reliance upon the warranties involved." By "reliance" the court seems to have meant tort-like substantive reliance on the warranty; that kind of reliance would be impossible if, for example, the party knew of information contradicting the warranty. In *Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992), the Eighth Circuit, applying Minnesota law, concluded that the Minnesota Supreme Court would likely require a plaintiff to prove reliance in a breach-of-warranty case. *Hendricks* assumed the continuing validity of the *Midland* decision, though it noted the existence of an intervening debate surrounding the proper characterization of breach-of-warranty claims.

The true character of warranty law has long been disputed. Dean Prosser, addressing warranty's "peculiar and uncertain nature," once described it as "a freak hybrid born of the illicit intercourse of tort and contract." William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 YALE L.J. 1099, 1126 (1960). Breach of warranty was originally thought of as a species of deceit. Perhaps for this reason a tort-like element of reliance crept into the warranty cause of action. *See, e.g.*, *Land v. Roper Corp.*, 531 F.2d 445, 449 (10th Cir. 1976) (holding that Kansas law would require reliance as an element of breach of express warranty in part because of its

foundation in the law of deceit). At the same time, warranties were said to arise from the consent of the parties, a principle of contract law. Warranty thus blurred the distinction between contract and tort.

Over time the prevailing understanding of breach of warranty changed. *See, e.g.*, W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 105, at 727–29 (5th ed. 1984) (describing warranty's origin in deceit and its eventual identification with contract); James J. White, *Freeing the Tortious Soul of Express Warranty Law*, 72 TUL. L. REV. 2089, 2090 (1998) (explaining how, in the sale-of-goods context, the replacement of the Uniform Sales Act with the Uniform Commercial Code and the adoption of the United Nations Convention on Contracts for the International Sale of Goods have contributed to warranty's gradual shift from tort to contract). While strands of tort law remained, especially in the realm of implied warranty, express warranty came to be seen as belonging in the domain of contract. *See* 18 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 52:45, at 264–65 (4th ed. 2001) (explaining that "because an express warranty is a creature of contract, the buyer may generally enforce it even though he or she has failed to exercise reasonable care to discern whether the product was defective"); Prosser, *supra*, at 1126–27; *see also Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 352 (Tex. 1987) ("Implied warranties are created by operation of law and are grounded more in tort than in contract."). *But see Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52 (Minn. 1982) (explaining the hybrid history of warranties and noting that while "their central role in sales law led them to be treated more generally as an element of contract law," their tort-like nature

has been emphasized in claims for defective products in order to permit a buyer to sue a manufacturer despite lack of privity and recover for consequential harm).

With this shift in perspective from warranty as tort to warranty as contract, courts began to hold that reliance is not an element of a breach-of-express-warranty claim, or if it is, it is satisfied simply by proving that the express warranty was relied on in contract formation—in other words, that the warranty was part of the bargained-for agreement. *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1002 n.5 (N.Y. 1990) (requiring reliance only in the sense that "the express warranties are bargained-for terms of the seller"); *see also Pegasus Mgmt. Co. v. Lyssa, Inc.*, 995 F. Supp. 29, 37–39 (D. Mass. 1998) (applying Connecticut law and explaining its prediction that "the Connecticut Supreme Court would hold that reliance is not a necessary element of proof on a contractual claim based upon a 'bargained for' express warranty," *id.* at 37); *Glacier Gen. Assurance Co. v. Cas. Indem. Exch.*, 435 F. Supp. 855, 860 (D. Mont. 1977) ("The problems of a reliance, and a right to rely, on the representations do not appear when the action is grounded in warranty. The warranty is as much a part of the contract as any other part, and the right to damages on the breach depends on nothing more than the breach of warranty."); *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 246 (N.M. 1991) (explaining that "reliance is not an element of a claim for breach of an express warranty reduced to writing"); *Shambaugh v. Lindsay*, 445 N.E.2d 124, 126–27 (Ind. Ct. App. 1983) (refusing to adopt tort-like reliance requirement). What is *not* required, in the view of these courts, is any sort of

substantive tort-like reliance—that is, a belief that the warranty
will be fulfilled or the warranted facts are true.

The New York Court of Appeals explained this distinction
well in *Ziff-Davis*. Instead of importing into warranty law a
tort-like understanding of reliance—again, reliance as a change
in position based on a belief in the truth of the information
warranted—the New York Court of Appeals favored contract-
type reliance, which is satisfied if "the express warranties are
bargained-for terms of the seller."[8] 533 N.E.2d at 1002 n.5. As
the court explained:

> The critical question is not whether the buyer
> believed in the truth of the warranted informa-
> tion, as Ziff–Davis would have it, but whether it
> believed it was purchasing the seller's promise as
> to its truth. This view of "reliance"—i.e., as
> requiring no more than reliance on the express
> warranty as being a part of the bargain between
> the parties—reflects the prevailing perception of
> an action for breach of express warranty as one
> that is no longer grounded in tort, but essentially
> in contract. The express warranty is as much a

---

[8] The court did not address whether or what type of reliance is required in
other circumstances, such as proving the existence of an express warranty
in the first place or assessing any sort of waiver of warranty; rather, it
limited its analysis to express warranties that are undisputedly part of a
bilateral contract. *See Ziff-Davis*, 553 N.E.2d at 1001. These finer doctrinal
points aren't at issue here. No one disputes the existence of an express
warranty in this case; nor has Illinois Paper raised any intricacies related to
waiver.

> part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled. The right to indemnification depends only on establishing that the warranty was breached.

*Id.* at 1000–01 (internal quotation marks, citations, and alterations omitted). This reasoning finds support in Corbin and other authorities, *see* 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 1.14, at 39 (rev. ed. 2002), which have pointed to Judge Learned Hand's explanation of the nature of warranty:

> A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.

*Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946).

In *Hendricks* the Eighth Circuit acknowledged *Ziff-Davis* but declined to import its reasoning into Minnesota law because it was convinced, based largely on *Midland*, that Minnesota would "require some sort of reliance." *Hendricks*, 972 F.2d at 194. The court did not engage with *Ziff-Davis*'s explanation of

the different types of reliance or specifically discuss what type of reliance Minnesota would require.

We are not certain whether the Minnesota Supreme Court would require reliance in a breach-of-warranty claim, and if so, if it would require a type of reliance other than that referred to in *Ziff-Davis*. Resort to first principles—specifically, the foundational principles of tort and contract law—adds to our uncertainty. These two bodies of law serve different interests and protect different expectations. *See, e.g.*, *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (explaining the "fundamental differences between tort and contract" (alteration and internal quotation marks omitted)). Contract law encourages private ordering and protects parties' bargained-for expectations. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 344 cmt. a (1981) ("The law of contract remedies implements the policy in favor of allowing individuals to order their own affairs by making legally enforceable promises."); 1 PERILLO, *supra*, § 1.1, at 2 (explaining that "the main underlying purpose" of contract law is "the realization of reasonable expectations that have been induced by the making of a promise"). Tort law establishes and incentivizes a set of default behavioral norms for society as a whole, allocating losses and affording compensation for injuries occurring in the course of human activity. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 4 cmt. c (1965) (explaining that "the actor's duty in tort is often to conduct himself in a manner the propriety of which is to be determined ex post facto by the jury in their determination as to whether the actor has or has not used reasonable care"); *id.* § 901 (1979) (listing the purposes of tort law, including compensation for harms, punishment and deterrence, rights

determination, and deterring self-help); KEETON ET AL., *supra*, § 1, at 5–6.

Thus, the source of the duty in tort and contract differs. In tort *the law* prescribes the duties members of society owe to one another and establishes remedies for their breach. In contract the source of the duty is the *consent* or *promise* of the contracting parties, who order their own relationship. *See* RESTATEMENT (SECOND) OF TORTS § 4 cmt. c (contrasting the sources and purposes of duty in tort and contract); KEETON ET AL., *supra*, § 92, at 655–56. The Minnesota Supreme Court has put it this way:

> Tort actions and contract actions protect different interests. Through a tort action, the duty of certain conduct is imposed by law and not necessarily by the will or intention of the parties. The duty may be owed to all those within the range of harm, or to a particular class of people. On the other hand, contract actions protect the interests in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific parties named in the contract.

*Glorvigen*, 816 N.W.2d at 584 (internal quotation marks omitted).

These differences—and particularly the distinction between public and private ordering—help explain why representations of law like the one at issue here are not actionable as fraud but may be actionable if contained in a contractual warranty. While the fact/law distinction may make sense in the tort context,

there may be no reason to distinguish between the two where a contractual warranty is at issue.

Why does the law draw the distinction in tort? Two reasons are often given: "[F]irst, that every man is presumed to know the law," or at least to be evenly situated in terms of access to information about it, a proposition often untrue with matters of fact; and second, "that no man, at least without special training, can be expected to know the law," and therefore a representation of the law is merely a statement of opinion. KEETON ET AL., *supra*, § 109, at 759. (We note, as does the treatise, that "[t]he contradiction [between these two justifications] is sufficiently obvious." *Id.*) Whatever the reason for the distinction, the principle that no one is justified in relying on another's representation of law means that representations of law are *categorically* not actionable as fraud because that tort requires a showing of reasonable reliance on another's misrepresentation.

We cannot be sure whether or how the Minnesota Supreme Court would adopt this distinction in its modern contract or warranty doctrine. As a general matter, parties can voluntarily contract around default principles, allocating rights, duties, and risks in their contract as they see fit, as long as their allocation does not violate public policy. While *someone* must assume the burden of knowing the law and ensuring that the parties' contract and dealings comply with it, we see no particular reason why the contracting parties cannot allocate that task to one or the other of them. Even though tort law assumes that "everyone knows the law," that doesn't mean it is costless to acquire that knowledge; it may be more efficient

(and create an incentive to get it right) to allocate the task to one party instead of requiring both parties to shoulder the costs equally. Why not, then, allow contracting parties to allocate the task of legal compliance and the corresponding risk (i.e., the financial cost) of noncompliance? Or from a different perspective, why not allow one party to hold itself out as the comparative legal expert and allow both parties to acknowledge information asymmetry? In tort there may be good reason to place on everyone the equal duty of knowing the law, but contracting parties may consent to be bound by a different allocation of the duty to know the law.

Without a clearer signal from the Minnesota Supreme Court, we are reluctant to hold, as the district court did, that a contractual allocation of the risk of legal noncompliance is *categorically* unenforceable under Minnesota law. That holding is hard to square with the freedom of contracting parties to define and order their own relationship. At the very least, reading a tort-like reliance requirement into a claim for breach of an express warranty blurs the distinction between contract and tort, a conceptual hazard that Minnesota courts try to avoid. *See Deli v. Univ. of Minn.*, 578 N.W.2d 779, 782–83 (Minn. Ct. App. 1998) (recognizing that "[t]he preservation of a boundary between contract and tort law is necessary to protect the specific interests and expectations each embodies"). Indeed, Minnesota enforces the boundary between tort and contract in several respects. For example, it has a statutory version of the economic-loss doctrine, *see* MINN. STAT. § 604.101 (2000); *see also* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR ECONOMIC HARM § 3 cmt. b (Tentative Draft No. 1, 2012) (explaining that the economic-loss doctrine "prevents the erosion of contract

doctrines by the use of tort law to work around them"), and Minnesota courts refuse to award damages in tort where a breached duty arises only by contract, *see, e.g.*, *Glorvigen*, 816 N.W.2d at 584 (explaining that "a party is not responsible for damages in tort if the duty breached was merely imposed by contract and not imposed by law" (internal quotation marks and alterations omitted)); *Deli*, 578 N.W.2d at 782–83 ("Extra-contractual damages, such as emotional distress, are limited to those instances in which the breach is accompanied by an independent tort to insure that contract law is not swallowed by tort law.").

Based on the authorities surveyed above, we find ourselves genuinely uncertain as to how the Minnesota Supreme Court would resolve the questions of Minnesota law presented here. It's not clear whether the state high court would hold that a cause of action for breach of an express warranty includes an element of reliance. If there is no such element, or if there is and it is fulfilled with contract-like (rather than tort-like) reliance, then breach of express warranty is properly conceptualized as breach of contract; a warranty, under this view, is a provision of the contract that, like any other, may be breached and give rise to an action for damages. If tort-like reliance *is* required, then breach of warranty appears to be a different species than simple breach of contract. If that is the case, we are not sure what options remain available to a plaintiff, like Lyon, who claims to be the victim of a breach of a contractual warranty that consists of a representation of legal compliance. Perhaps no remedy remains, but that's not a judgment we're comfortable making in the absence of clearer guidance from the Minnesota Supreme Court.

Under these circumstances, we think it prudent to ask for that guidance. *See* MINN. STAT. § 480.065 subd. 3 (1998) ("The Supreme Court of this state may answer a question of law certified to it by a court of the United States … if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state."). The parties have not requested certification, but we may in our discretion certify a question under Circuit Rule 52. When exercising that discretion, the most important consideration is whether we find ourselves genuinely uncertain about a question of state law that is key to a correct disposition of the case. Certification is also appropriate when the case concerns a matter of vital public concern, where the issue likely will recur in other cases, where resolution of the question determines the outcome of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.

The answers to the questions posed here will resolve the most serious (and potentially dispositive) legal issue in this case and will also have significant implications for private ordering under Minnesota law more broadly. Myriad commercial contracts contain similar provisions allocating the risks and duties related to compliance with the law. Representations of legal compliance are common in mortgage-industry contracts, for example, and will almost certainly feature prominently in the wave of post-financial-crisis litigation. The answers to the questions posed here will also clarify for courts applying Minnesota law whether all contractual warranties are actionable, or whether instead courts must classify each warranty as one of fact or of law and find it enforceable or not accordingly.

Finally, the answers the state high court gives will constitute an important contribution to the common law regarding the boundaries between tort and contract.

### III. Conclusion

We respectfully ask the Minnesota Supreme Court, in an exercise of its discretion, to answer the following certified questions:

1.  Is reliance an element of a breach-of-express-warranty claim? If so, what type of reliance is required: contract-like reliance or tort-like reliance?

2.  If tort-like reliance is required for a breach-of-express-warranty claim, is one contracting party entitled to rely on the other's express, contractual representation of law? If such reliance is not justified and the party's warranty claim therefore fails, is a breach-of-contract action based on that same express contractual warranty also barred?

We invite reformulation of the questions presented, and nothing in this certification should be read to limit the scope of the inquiry. Further proceedings in this court are stayed while this matter is under consideration by the Supreme Court of Minnesota.

QUESTIONS CERTIFIED.