In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1789

IN RE:

ELENA HERNANDEZ,

*Debtor-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 CV 3230 — **Jorge L. Alonso**, *Judge*.

ARGUED OCTOBER 26, 2018 — DECIDED MARCH 18, 2019

Before WOOD, *Chief Judge*, and SYKES and SCUDDER, *Circuit Judges*.

SYKES, *Circuit Judge*. When Elena Hernandez filed a voluntary Chapter 7 bankruptcy petition in December 2016, she reported one sizable asset: a pending workers' compensation claim valued at $31,000. To place that claim beyond the reach of creditors, she listed it as exempt under section 21 of the Illinois Workers' Compensation Act ("the Act"), 820 ILL. COMP. STAT. 305/21 (2011), applicable via 11 U.S.C. § 522(b). Two days after filing for bankruptcy, Hernandez settled the claim.

Hernandez owed significant sums to three healthcare providers who treated her work-related injuries. The providers objected to her claimed exemption, arguing that 2005 amendments to the Act enable unpaid healthcare providers to reach workers' compensation awards and settlements. The bankruptcy court denied the exemption and Hernandez appealed. The district judge affirmed, concluding that using the workers' compensation exemption to thwart this specific class of creditors would frustrate the Act's purpose.

We confront an important question of statutory interpretation: whether the Illinois Workers' Compensation Act, as amended, allows care-provider creditors to reach the proceeds of workers' compensation claims. Section 21 of the Act has been interpreted by bankruptcy courts to create an exemption for these assets. The 2005 amendments made several changes to the Illinois workers' compensation regime, imposing a new fee schedule and billing procedure for care providers seeking remuneration. Did those changes alter the scope of section 21?

The Illinois Supreme Court hasn't addressed the interplay between these competing components of state workers' compensation law. Without that controlling authority, we find ourselves genuinely uncertain about the correct interpretation. This state-law issue is dispositive, likely to recur, and implicates the effective administration of workers' compensation in Illinois. Therefore, we respectfully certify the question set forth in this opinion to the Illinois Supreme Court.

## I. Background

In December 2016 Hernandez filed a Chapter 7 bankruptcy petition in the Northern District of Illinois. Between 2009 and 2011, she sustained on-the-job injuries and was treated at the Ambulatory Surgical Care Facility, Marque Medicos Fullerton LLC, and Medicos Pain and Surgical Specialists, S.C. In her bankruptcy petition, Hernandez reported unsecured claims held by these healthcare providers. She owed $28,709.60 to Ambulatory Surgical; $58,901.20 to Marque Medicos Fullerton; and $50,161.26 to Medicos Pain and Surgical. She reported minimal assets, listing $1,300 in bank accounts; some inexpensive jewelry; and her pending workers' compensation claim, which she valued at $31,000.

Hernandez claimed an exemption for the entirety of that claim, citing section 21 of the Illinois Workers' Compensation Act. Two days after filing her bankruptcy petition, Hernandez settled the claim with her employer, apparently for $30,566.33, without consulting the Trustee. The health- care providers objected to Hernandez's claimed exemption, arguing that the amended Act empowered them to reach her settlement. They also urged the court to disallow the exemption on grounds that the settlement was the product of fraud. In April 2017 the bankruptcy court heard argument on the exemption. The judge focused on process-based concerns about Hernandez's settlement—including her failure to notify interested parties or the Trustee—rather than the statutory arguments raised by the parties. In the end, the judge summarily denied the exemption without a written opinion.

Hernandez appealed to the district court, and Judge Alonso affirmed. His opinion focused exclusively on the interplay between section 21 of the Act and the 2005

amendments codified at 820 ILL. COMP. STAT. 305/8 and 8.2. Relying on *In re McClure*, 175 B.R. 21 (Bankr. N.D. Ill. 1994), Judge Alonso held that section 21 creates an exemption for workers' compensation claims but the subsequent amendments "significantly altered" the Act, striking a "balance" by limiting what providers can charge while allowing them to resume collection efforts following a settlement. Reading the Act as a "harmonious whole" and citing interpretive canons against surplusage and absurdity, Judge Alonso rejected Hernandez's interpretation of the amendments as "not reasonable" because it would undermine a key purpose of the amended Act: ensuring payment for care providers.

Hernandez moved to alter or amend the judgment. At a hearing on the motion, Judge Alonso again rejected her statutory arguments. This appeal followed.

## II. Discussion

We apply de novo review to the bankruptcy court's conclusions of law. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013). "A debtor's entitlement to a bankruptcy exemption is a question of law … ." *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993). Matters of statutory interpretation are likewise questions of law. *Boyd v. Ill. State Police*, 384 F.3d 888, 896 (7th Cir. 2004).

A bankruptcy estate contains most property interests held by the debtor, including pending claims. 11 U.S.C. § 541(a). Under § 522, some assets within the estate are nonetheless shielded from creditors by statutory exemptions. *Clark v. Chi. Mun. Emps. Credit Union*, 119 F.3d 540, 543 (7th Cir. 1997) (explaining that under § 522 "an individual debtor can retain certain exempt property while the debtor's non-exempt property

may be used to satisfy creditors' claims"). The Bankruptcy Code recognizes two sources of exemptions: the federal exemptions outlined in § 522(d) and, essentially, all others (that is, federal exemptions beyond § 522(d) and state-law exemptions). *See* 11 U.S.C. § 522(b)(3). The default rule is that a debtor chooses between these bodies of law. *Id.* § 522(b)(1). However, states may deny debtors that choice and restrict them to non-§ 522(d) exemptions. *Id.* § 522(b)(2). Illinois has done so. *See* 735 ILL. COMP. STAT. 5/12-1201; *Clark*, 119 F.3d at 543.

Illinois law carves out exemptions for a broad range of personal property. 735 ILL. COMP. STAT. 5/12-1001. The State's general exemption statute doesn't mention workers' compensation claims or awards. *Id.* Hernandez relies on section 21 of the Illinois Workers' Compensation Act, which bankruptcy courts have interpreted as an exemption. In relevant part that section provides: "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages." 820 ILL. COMP. STAT. 305/21. A version of section 21 has been in place since the early 20th century. *See Lasley v. Tazewell Coal Co.*, 223 Ill. App. 462, 463 (Ill. App. Ct. 1921).

In the 1994 *In re McClure* decision, a bankruptcy court classified section 21 as a state-law exemption applicable in bankruptcy proceedings under § 522(b). 175 B.R. at 23–24. The court acknowledged that section 21 isn't codified alongside other state-law exemptions and doesn't use the word "exempt." *Id.* at 23. Even so, the court held that the provision's plain "language is effective to exempt workers' compensation claims from judgments of creditors." *Id.* The court reasoned

that the statutory text may not be overridden by "the placement of provisions of state law within a particular codification." *Id.*

*McClure* found support for its conclusion in *Mentzer v. Van Scyoc*, 599 N.E.2d 58 (Ill. App. Ct. 1992). *Mentzer* involved a small-claims dispute in which the trial court ordered a tenant to pay $10 per month to her landlord. *Id.* at 60. The tenant's income was comprised entirely of workers' compensation benefits. She objected to the judgment, arguing that section 21 shielded this income from creditors. The Illinois Appellate Court held that "court[s] cannot generally require workers' compensation benefits to be applied to the debts of a claimant, even when reduced to judgment, unless some specific statutory provision … so provides." *Id.* at 61. Nor did Illinois's general exemption statute "supersede or infringe upon the protection given by section 21." *Id. Mentzer* relied on an earlier Illinois Supreme Court case addressing a claim against a guardianship whose sole asset was a workers' compensation award. *In re Estate of Callahan*, 578 N.E.2d 985 (Ill. 1991). *Callahan*, in turn, held that section 21 prevented the claimant from reaching an award under the Act; in so holding, the court relied in part on a dictionary definition of "debt." *Id.* at 989.

We don't have a dispositive Illinois Supreme Court opinion clarifying the boundaries of section 21 or even classifying it as an exemption. The parties agree that section 21 creates an exemption and thus haven't briefed that question, so for the time being we assume that the interpretation embraced in *McClure* is correct. The crux of the dispute is whether the exemption applies to the claims of healthcare providers after the 2005 amendments.

We turn now to the text of those amendments. First, the General Assembly created a detailed schedule limiting the fees providers may charge for their services to treat job-related injuries or illnesses. 820 ILL. COMP. STAT. 305/8.2. Under section 8.2(a), the Workers' Compensation Commission ("the Commission") is empowered to set and adjust price ceilings for medical care on a regional basis across Illinois.

The General Assembly also altered section 8(a), requiring employers to "pay the negotiated rate, if applicable, or the lesser of the health care provider's actual charges or [fees] according to a fee schedule … in effect at the time the service was rendered for all the necessary" medical care "reasonably required to cure or relieve from the effects of the accidental injury." 820 ILL. COMP. STAT. 305/8(a). Section 8(a) also instructs employers to pay undisputed medical bills *directly* to care providers on the employee's behalf. *Id.*

To accompany the new fee schedule, the amendments installed new billing and collection rules. Under section 8.2(d): "When a patient notifies a provider that the treatment[] … being sought is for a work-related illness or injury and furnishes the provider the name and address of the responsible employer, the provider shall bill the employer or its designee directly." If the "bill contains substantially all the required data elements necessary to adjudicate the bill," the employer has 30 days to pay the providers involved in the claim. *Id.* § 8.2(d)(1). Claim denials or disputes must be communicated to the provider within 30 days. *Id.* § 8.2(d)(2). Unpaid undisputed bills accrue statutory interest. *Id.* § 8.2(d)(3).

The amendments also curtailed a billing practice known as "balance billing," whereby providers attempted to collect from an employee the remaining balance on an undisputed

bill paid only partially by an employer. "Except as provided in subsections (e-5), (e-10), and (e-15)," the Act now bars providers from "hold[ing] an employee liable for costs related to a non-disputed procedure, treatment, or service rendered in connection with a compensable injury," or "bill[ing] or otherwise attempt[ing] to recover from the employee the difference between the provider's charge and the amount paid by the employer … on a compensable injury." *Id.* § 8.2(e).

Subsections (e-5), (e-10), and (e-15) address procedures in the event of a dispute between the employer and the provider over a medical bill. If an employer determines that an injury or illness is noncompensable under the Act and refuses to pay the entire bill, the provider is entitled to seek payment from the employee. *Id.* § 8.2(e-5), (e-10). But if the employee notifies the provider that he has filed an application with the Commission to resolve the dispute, the provider "shall cease any and all efforts to collect payment," and the statute of limitations on the debt is tolled. *Id.* During the pendency of the dispute, providers are permitted to mail payment reminders— but not bills—to the employee. *Id.* § 8.2(e-15).

Finally, the General Assembly addressed collection procedures *after* an award or settlement of a disputed claim:

> Upon a final award or judgment by an Arbitrator or the Commission, or a settlement agreed to by the employer and the employee, a provider may resume any and all efforts to collect payment from the employee for the services rendered to the employee and the employee shall be responsible for payment of any outstanding bills for a procedure, treatment, or service

> rendered by a provider as well as the interest awarded under subsection (d) of this Section.

*Id.* § 8.2(e-20). After the claim is adjudicated or settled, the provider may seek collection from the employee, capped at the fee schedule's price ceiling if the care is compensable. Payment for noncompensable services "is the responsibility of the employee unless a provider and employee have agreed otherwise in writing." *Id.*

The healthcare providers here argue that these amendments carve out an exception to the exemption in section 21 for care providers who treat an employee's work-related injuries or illnesses. Their argument focuses squarely on statutory purpose. Leaving the exemption intact would "obviate the plain meaning" of section 8.2(e-20) by placing a workers' compensation settlement "outside the reach of a specific class of creditors … [that] the Act has now gone to extraordinary lengths to protect." Hernandez emphasizes statutory text, arguing that the General Assembly knew how to create an exception to the exemption but conspicuously left out any language to that effect. Thus, while the amendments ensure that providers can seek recourse against an employee following a settlement, section 21 continues in force as an exemption, walling off the proceeds of this particular exempted claim.

The healthcare providers' interpretation carried the day below. The district judge concluded that section 21 continues to exempt workers' compensation claims as against *general* creditors "but not as against medical providers after the debtor settles her … claim with her employer."

We apply Illinois's rules of statutory construction when interpreting an Illinois statute. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir. 2016). "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature," and "[t]he best evidence of legislative intent is the statutory language." *People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003). When assessing legislative intent, "courts should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought." *Id.* Statutory provisions should not be read in isolation but "as a whole; all relevant parts of the statute must be considered when courts attempt to divine the legislative intent underlying the statute." *People v. NL Indus.*, 604 N.E.2d 349, 356 (Ill. 1992).

Illinois law recognizes interpretive canons against surplusage and absurdity. "We must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous, avoiding an interpretation [that] would render any portion of the statute meaningless or void," and "presume that the General Assembly did not intend absurdity, inconvenience, or injustice." *Sylvester v. Indus. Comm'n*, 756 N.E.2d 822, 827 (Ill. 2001) (citations omitted). This statute in particular "is to be interpreted liberally[] to effectuate its main purpose—providing financial protection for interruption or termination of a worker's earning power." *Id.* (citation omitted).

Applying these interpretive rules, we see plausible arguments on both sides. The amendments constructed a payment process designed to balance the interests of healthcare providers, employees, and employers. For instance, by tolling the statute of limitations during payment disputes, the General

Assembly clearly sought to "protect[] providers' ability to ultimately receive payment." *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1036 (Ill. App. Ct. 2017). Hernandez's interpretation incentivizes strategic behavior and unquestionably undermines healthcare providers. It places the only asset that employees *necessarily* possess after receiving a workers' compensation award or settlement—the award or settlement itself—beyond the reach of providers. Moreover, ensuring that providers are paid helps guarantee that employees receive care in the first place—surely a goal of the workers' compensation regime. Applying the exemption in section 21 to the claims of care providers creates tension with the rest of the Act. It's at least possible that Hernandez's interpretation generates the "absurdity, inconvenience, or injustice" that Illinois law seeks to avoid. *Sylvester*, 756 N.E.2d at 827.

On the other hand, Hernandez is correct that the plain text of the amended Act doesn't contain specific language of an exception to section 21. If the drafters wanted to place workers' compensation settlements within the reach of these creditors, they could have altered section 21 or explained that section 8.2(e-20) enables providers to reach those assets. Reading these amendments to create an implicit exception to section 21 is not a lightly taken step. *In re Michael D.*, 69 N.E.3d 822, 825 (Ill. 2015) ("It is never proper to depart from plain language by reading into a statute exceptions, limitations, or conditions [that] conflict with the clearly expressed legislative intent."). The Act never discusses which assets are available to healthcare providers seeking to vindicate their collection rights. So while the purpose of the amendments may have been to protect care providers, it's not obvious that the General Assembly *effectuated* that purpose by exposing a

heretofore-exempt asset. And while Hernandez's interpretation might hinder the Act's effectiveness, it wouldn't make any provision "meaningless or void," triggering the canon against surplusage. *Sylvester*, 756 N.E.2d at 827.

Without guidance from the Illinois Supreme Court, we decline to hold, as the district court did, that section 21 no longer blocks this class of creditors. That's one reasonable interpretation of the amended Act, but it's also possible that the General Assembly's silence on the matter means the workers' compensation exemption remains intact.

In her appellate brief, Hernandez moves to certify this question to the Illinois Supreme Court.[1] The healthcare providers join her motion. We may certify a question if "the rules of the highest court of a state provide for certification to that court." 7TH CIR. R. 52(a). The Illinois Supreme Court permits certification provided the question is one of state law, "determinative of the said cause," and unanswered by "controlling precedents." ILL. S. CT. R. 20(a).

In exercising our discretion to certify a question, "the most important consideration is whether we find ourselves genuinely uncertain about a question of state law that is key to a correct disposition of the case." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 766 (7th Cir. 2013). For the reasons discussed above, we have "serious doubt[s] about how [the] state's highest court would resolve" this question of statutory interpretation. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001) (quotation marks omitted).

---

[1] A party is permitted to move for certification in his brief without filing a separate motion. 7TH CIR. R. 52(a) ("A motion for certification shall be included in the moving party's brief.").

Neither the Illinois Supreme Court nor the state appellate court has addressed the interplay between section 21 and the 2005 amendments to the Act. *Lyon*, 732 F.3d at 766 (explaining that certification is warranted "where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue"). And the answer to that question determines the outcome in Hernandez's case—a requirement for certification under our caselaw and the Illinois Supreme Court's rule. *Zahn*, 815 F.3d at 1086.

There is an added layer of uncertainty here because the Illinois Supreme Court hasn't answered a key preliminary question: whether section 21 creates an exemption in the first place. To be sure, a federal bankruptcy court has construed section 21 to do so, *see In re McClure*, 175 B.R. at 24, and other bankruptcy courts have followed suit. But that's not dispositive. Without an authoritative interpretation of section 21 from the state courts, our evaluation of the interaction between that section and later enactments is yet more uncertain.

Our decision to certify also considers whether "the case concerns a matter of vital public concern" or is an "issue likely [to] recur in other cases." *Zahn*, 815 F.3d at 1085 (quotation marks omitted). Of course, Hernandez won't be the last bankruptcy debtor with unpaid medical bills and a workers' compensation settlement. In many low-asset bankruptcies, access to the proceeds of a workers' compensation claim will determine whether healthcare providers receive compensation at all. Whether the Act permits providers to reach that asset implicates the state's ability to administer a fair and efficient workers' compensation regime.

We respectfully ask the Illinois Supreme Court, in its discretion, to answer the following certified question:

> After the 2005 amendments to 820 ILL. COMP.
> STAT. 305/8 and the enactment of 305/8.2, does
> section 21 of the Illinois Workers' Compensa-
> tion Act exempt the proceeds of a workers' com-
> pensation settlement from the claims of
> medical-care providers who treated the illness
> or injury associated with that settlement?

Nothing in this certification should be read to limit the scope of the Illinois Supreme Court's inquiry, and the justices are invited to reformulate the certified question. Further proceedings in this court are stayed while this matter is under consideration by the Illinois Supreme Court.

QUESTION CERTIFIED.