In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-3053

JADAIR INTERNATIONAL, INC.,

*Plaintiff-Appellant,*

*v.*

AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-1103 — **J.P. Stadtmueller**, *Judge.*

ARGUED MAY 25, 2023 — DECIDED AUGUST 9, 2023

Before EASTERBROOK, ROVNER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* David Schmutzler was the owner and president of Jadair International, Inc. ("Jadair"). He was also a pilot with decades of experience. On Jadair's behalf, Schmutzler secured an aircraft insurance policy from the American National Property & Casualty Company ("American National"), covering a Cessna airplane owned by Jadair. Tragically, the Cessna crashed in May 2020, killing Schmutzler, who was piloting the plane. Jadair filed a claim on the

policy. American National denied coverage because Schmutzler did not have a current and valid medical certificate from the Federal Aviation Administration ("FAA") at the time of the accident. Jadair sued American National in federal court for payments due under the policy. The district court granted American National's motions for summary and declaratory judgment, holding that the policy unambiguously excludes coverage for any accident involving the Cessna where the pilot lacks a current FAA medical certificate. We affirm.

## I.    BACKGROUND

### A. Insurance Policy and Accident

Schmutzler applied to American National for an insurance policy on the Cessna, FAA registration number N1JA, in 2019. The application listed Schmutzler as the Cessna's only authorized pilot.

On the application, Schmutzler indicated that he was a licensed pilot with an FAA medical certificate.[1] *Id.* The application included a section titled "Minimum Pilot Requirements," which stated that "there is no coverage in flight unless the aircraft is being operated by the pilot(s) designated on this document who has/have at least the certificates, ratings, and pilot experience indicated, and who … is/are properly qualified for the flight involved." Schmutzler initialed this provision.

---

[1] The FAA generally requires pilots to obtain medical certificates indicating that they are physically fit to fly. Certificates are issued for a specified period of time, after which they expire. *See Bullwinkel v. U.S. Dep't of Transp.*, 787 F.2d 254, 255 (7th Cir. 1986).

American National issued the policy to Jadair on June 27, 2019. We will summarize briefly the provisions of the policy most relevant to this case.

First, Item Nine of the policy's Coverage Identification Page states:

> The Aircraft must be operated in flight only by a person having the minimum qualifications shown below. The pilot must have a current and valid (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the FAA for each flight. THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS.
>
> **AS ENDORSED**

This boilerplate provision is subject to the following Endorsement:

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

### Requirements for the Pilot Flying the Aircraft

This endorsement applies only to the following **aircraft**:

*If no entry is made this endorsement applies to all **aircraft** covered by **your** policy.*

This endorsement completes or changes Item 9. REQUIREMENTS FOR THE PILOT FLYING THE AIRCRAFT of your Coverage Identification Page to read as follows:

The **aircraft** must be operated **in flight** only by a pilot named below having the minimum qualifications shown. The pilot must have a current and valid (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the **FAA** for each flight. There is no coverage if the pilot does not meet the qualifications or requirements specified below for each designated use of the **aircraft**:

MINIMUM REQUIREMENTS FOR PILOT, PILOT CERTIFICATE, RATINGS AND LOGGED FLYING HOURS:

As respects N1JA:

Any person having a private or more advanced pilot certificate with airplane single-engine land and instrument-airplane ratings issued by the **FAA** who has logged at least 1,500 total hours as pilot with a minimum of 500 hours in aircraft equipped with retractable landing gear of which not less than 50 hours having been in the same make and model aircraft being operated;

Otherwise,

David Schmutzler

After the policy was bound and during the coverage period, on May 15, 2020, the Cessna crashed, killing Schmutzler, who was piloting the craft. It is undisputed that Schmutzler lacked a current and valid FAA medical certificate at the time of the accident (his previous certificate had expired). It also is undisputed that the accident was not caused by any health condition of Schmutzler's. It seems that the Cessna suffered a mechanical failure.

Jadair filed a claim on the policy. American National denied it, stating that the policy excludes coverage for accidents involving a pilot without a current and valid FAA medical certificate.

## B. Proceedings Below

Jadair sued American National in federal court, seeking a declaratory judgment that the accident was covered under the

policy. American National counterclaimed for a declaratory judgment that the accident was not covered, and the parties filed cross-motions for summary judgment. The district court entered summary and declaratory judgment for American National, holding that the policy did not cover the accident because Schmutzler lacked a current and valid FAA medical certificate and the policy states that such a certificate is a requirement for coverage. *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 635 F. Supp. 3d 667, 685 (E.D. Wis. 2022).[2] Jadair now appeals.

## II. DISCUSSION

Jadair raises multiple arguments on appeal. Principally, it contends that the policy, and more specifically the Endorsement, exempts Schmutzler from any medical-certificate requirement and, therefore, the district court erred when it held that Schmutzler's failure to comply with this requirement was a basis to deny coverage. Jadair also argues that, even if the medical-certificate requirement applies to Schmutzler, Wisconsin law requires American National to prove that Schmutzler's violation of the requirement increased American National's risk of loss or contributed to the accident. *See* Wis. Stat. § 631.11(3). Alternatively, Jadair asks us to certify a question to the Wisconsin Supreme Court about the scope of § 631.11(3) in the context of aviation insurance.

---

[2] The district court also rejected a separate claim by Jadair that American National had acted in bad faith in denying coverage under the policy. *Id.* at 684. Jadair raises no challenge to this holding, so we will not discuss it further.

As we are sitting in diversity,[3] we apply state substantive
law and federal procedural law to resolve these issues. *Santa's
Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339,
345 (7th Cir. 2010). With respect to the former, the parties
agree that Wisconsin substantive law governs. *Jadair Int'l*,
635 F. Supp. 3d at 674–75.

As to the latter, this appeal comes to us from the district
court's grant of summary and declaratory judgment for
American National. A court "shall grant summary judgment
if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a mat-
ter of law." Fed. R. Civ. P. 56(a). Material facts are facts that
"might affect the outcome of the suit," and a dispute as to
those facts is genuine if "the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Ander-
son v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determin-
ing whether a genuine dispute of material fact exists, we
"view the evidence and draw all [reasonable] inferences in a
way most favorable to the nonmoving party." *Bombard v. Fort
Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Furthermore, the Declaratory Judgment Act permits a fed-
eral court to "declare the rights and other legal relations of
any interested party" in the case of an "actual controversy"
within the court's jurisdiction. 28 U.S.C. § 2201(a); *see also* Fed.

---

[3] Jadair is a Wisconsin corporation with its principal place of business
in Wisconsin, and American National is a Missouri corporation with its
principal place of business in Missouri. The amount in controversy ex-
ceeds $75,000. 28 U.S.C. § 1332(a). Although Jadair brought its action in
part pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201,
that Act does not enlarge our subject matter jurisdiction. *California v. Texas*,
141 S. Ct. 2104, 2115–16 (2021).

R. Civ. P. 57. There is no dispute that the Act applies to this case.

We will treat the district court's grants of summary judgment and declaratory judgment together, since the parties do not differentiate between them, and both turn on the same questions of law.[4] We review the district court's judgment *de novo*. *REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022); *Vanliner Ins. Co. v. Sampat*, 320 F.3d 709, 711–12 (7th Cir. 2003).

With that, we turn to Jadair's arguments.

## A. Whether the Policy Covers Jadair's Claim

To interpret insurance policies, Wisconsin courts employ the standard rules of contract construction. *Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1030 (7th Cir. 2014) (citing *Marotz v. Hallman*, 734 N.W.2d 411, 421 (Wis. 2007)). The goal of contract construction is to effectuate the intent of the contracting parties. *Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819, 824 (Wis. 2012). To accomplish this goal, we will read the American National policy in accordance with its ordinary meaning, as that meaning would be understood "by a reasonable person in the position of the insured" (here,

---

[4] The "fixing of the boundary between questions of law and questions of fact" is a matter of federal procedural law, not state substantive law, in diversity actions. *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). As will be shown below, this case involves the interpretation of an unambiguous contract and a statute. These are questions of law. *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004); *Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002). We note that the same is true under Wisconsin law. *Town Bank v. City Real Est. Dev., LLC*, 793 N.W.2d 476, 483 (Wis. 2010); *MercyCare Ins. Co. v. Wis. Comm'r of Ins.*, 786 N.W.2d 785, 793 (Wis. 2010).

Jadair). *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004).

If the relevant policy language is unambiguous, we will enforce it as written. *Johnson Controls, Inc. v. London Market*, 784 N.W.2d 579, 586 (Wis. 2010). If the policy language is ambiguous, Wisconsin law generally requires us to construe it in favor of the insured. *Inter-Ins. Exch. of Chi. Motor Club v. Westchester Fire Ins. Co.*, 130 N.W.2d 185, 188 (Wis. 1964). But, before we do, we can try to resolve such ambiguities by relying on extrinsic evidence to cast light on the parties' intent. *Town Bank*, 793 N.W.2d at 484.

In applying the law to the facts of this case, we employ the three-step framework laid out by the Wisconsin Supreme Court in *American Girl*. At the first step, "we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage." *Am. Girl*, 673 N.W.2d at 73. If there is an initial grant of coverage, we will proceed to the second step, where we "examine the various exclusions [in the policy] to see whether any of them preclude coverage of the present claim." *Id.* If a particular exclusion seems to preclude coverage, we will move to the third step, where we "look to see whether any exception to that exclusion reinstates coverage." *Id.*

There is no dispute as to step one: the Cessna was the subject of American National's policy, and the policy makes an initial grant of coverage over Jadair's claim. But Jadair's claim falters at steps two and three, because the policy

contains an exclusion that precludes coverage of the accident, and no exception to the exclusion reinstates coverage.[5]

Item Nine of the policy's Coverage Identification Page states that the Cessna must be operated by a pilot with a current and valid FAA medical certificate. It then explicitly states that "THERE IS NO COVERAGE" if the pilot lacks such a certificate. As Jadair rightly conceded at oral argument, this provision is an exclusion under Wisconsin law because it precludes coverage of an otherwise insured loss where the pilot of the Cessna does not have FAA medical certification. *Progressive N. Ins. Co. v. Hall*, 709 N.W.2d 46, 52 (Wis. 2006) (stating that an exclusion is "a provision that eliminates coverage under a particular policy where, were it not for the exclusion, coverage would have existed"). And, because Schmutzler undisputedly lacked a current and valid FAA medical certificate at the time of the accident, this exclusion precludes coverage of Jadair's claim.

But, as Jadair sees it, the road does not end there. According to Jadair, the Endorsement to Item Nine creates an exception to Item Nine's medical-certificate exclusion. And this exception, Jadair argues, reinstates coverage of the present claim.

Under Wisconsin law, an endorsement "may add to, modify, or supplant" the provisions of an insurance policy. *Romero v. W. Bend Mut. Ins. Co.*, 885 N.W.2d 591, 596 (Wis. Ct.

---

[5] As we discuss the various provisions of the policy, it would be helpful to the reader to have a copy of those provisions on hand. *See supra* at 2–4.

App. 2016).[6] As a general rule, an endorsement is to be read along with the remainder of the policy. *Id.* An endorsement will not be read to "abrogate[], waive[], limit[], or modif[y]" any provision of an insurance policy unless (1) the endorsement expressly states that its provisions are "substituted for those in the body of the policy" or (2) the endorsement and the policy irreconcilably conflict with one another. *Westchester Fire*, 130 N.W.2d at 188 (quoting John Appleman, *Insurance Law and Practice* § 7538 (1943)). Because neither circumstance presents itself here, the Endorsement leaves Item Nine's medical-certificate exclusion undisturbed.

First, the Endorsement does not expressly substitute its provisions for those found in Item Nine. Jadair relies heavily on the line at the top of the Endorsement page, which states that the Endorsement "CHANGES [THE] POLICY." But the Endorsement goes on to say that it "completes or changes" Item Nine. The word "completes" indicates that the Endorsement may be read as adding to, rather than displacing, Item Nine's provisions. Indeed, that is the most sensible way to read the Endorsement, since, as we will explain next, the terms of the Endorsement are perfectly consistent with those of Item Nine.

Second, there is no irreconcilable conflict between Item Nine's medical-certificate exclusion and any provision of the Endorsement. To understand Jadair's arguments to the contrary, we must examine the language of Item Nine and the

---

[6] In applying Wisconsin law, we are bound only by the decisions of the Wisconsin Supreme Court. But the decisions of Wisconsin's intermediate appellate courts "provide significant guidance" as well. *United States v. Glispie*, 943 F.3d 358, 367 n.13 (7th Cir. 2019).

Endorsement in some detail. Item Nine lists three things that any pilot of the Cessna "must have," including: (1) a current and valid FAA medical certificate, (2) flight review, and (3) a pilot certificate. The next sentence of Item Nine states that "THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS." The Endorsement is a bit different. Like Item Nine, it states that the pilot of the Cessna "must have" an FAA medical certificate, flight review, and a pilot certificate. But it does not expressly state, as does Item Nine, that "THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS." The Endorsement omits this language and instead states that "[t]here is no coverage if the pilot does not meet the qualifications or requirements specified below." And below that sentence, these requirements (not found in Item Nine) are listed:

MINIMUM REQUIREMENTS FOR PILOT, PILOT CERTIFICATE, RATINGS AND LOGGED FLYING HOURS:

As respects N1JA:

Any person having a private or more advanced pilot certificate with airplane single-engine land and instrument-airplane ratings issued by the FAA who has logged at least 1,500 total hours as pilot with a minimum of 500 hours in aircraft equipped with retractable landing gear of which not less than 50 hours having been in the same make and model aircraft being operated;

Otherwise,

David Schmutzler

These additional requirements (which we will call the "endorsement-specific requirements") indicate that the pilot of the Cessna must have a certain amount of flight experience or "[o]therwise" be David Schmutzler. Of course, Schmutzler satisfied the latter condition.

Jadair argues that the Endorsement abrogated Item Nine's medical-certificate exclusion by omitting Item Nine's express provision that "THERE IS NO COVERAGE" if the pilot of the Cessna lacks a medical certificate. We disagree. While it is true that the Endorsement does not repeat Item Nine's explicit

statement that coverage is excluded if the Cessna's pilot does not have a medical certificate, nothing in the Endorsement is inconsistent with that statement either. Indeed, the Endorsement still says (like Item Nine itself) that the pilot "must have" a current and valid medical certificate. Because there is no conflict between Item Nine and the Endorsement, we read the latter as supplementing—not supplanting—the former. *Westchester Fire*, 130 N.W.2d at 188.

This reading is reinforced by the Endorsement's statement that it "completes *or* changes" Item Nine (emphasis added). As such, we are untroubled by the Endorsement's failure to expressly exclude coverage when the pilot of the Cessna lacks a current and valid medical certificate. That express exclusion is found in Item Nine, which remains operative. *See Romero*, 885 N.W.2d at 596 (stating that an endorsement is to be "read along with" the rest of the insurance policy).

Jadair also contends that the endorsement-specific requirements displace the medical-certificate requirement and all other pilot requirements in Item Nine. In support, Jadair points to the language "Otherwise, David Schmutzler" and argues that this effectively exempts him from all pilot requirements (because, after all, he was David Schmutzler), including the need to have a medical certificate. But this is a strained reading of the Endorsement.

The Endorsement states that "[t]here is no coverage if the pilot does not meet" the endorsement-specific requirements. But it does not follow from that statement that there *is* coverage whenever the pilot *does* meet only the endorsement-specific requirements. Indeed, the Endorsement itself makes clear that, in addition to the endorsement-specific requirements, any pilot of the Cessna "must have" a current

and valid medical certificate. This provision would be meaningless if satisfying the endorsement-specific requirements was sufficient to trigger coverage, as Jadair contends. *Md. Arms L.P. v. Connell*, 786 N.W.2d 15, 25 (Wis. 2010) ("When possible, contract language should be construed to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.'") (quoting *Kasten v. Doral Dental USA, LLC*, 733 N.W.2d 300, 315 (Wis. 2007)).

The best way to read the endorsement-specific requirements is to interpret them as *additional* requirements that the pilot of the Cessna must meet under the policy, on top of the medical-certificate requirement in the Endorsement and Item Nine. Thus, even though Schmutzler satisfied the endorsement-specific requirements, he was still bound by Item Nine and the Endorsement's medical-certificate requirement, and he failed to satisfy it. The consequence of that failure, as Item Nine states, is exclusion of coverage for the accident. Nothing in the Endorsement changes that.

In sum, we find that American National's policy unambiguously excludes coverage for any accident, like this one, where the pilot lacks a valid and current FAA medical certificate. But even if the policy were ambiguous on its face, we would interpret it as we have. It is true that ambiguous provisions in an insurance policy are generally to be construed in favor of the insured. *Westchester Fire*, 130 N.W.2d at 188. However, extrinsic evidence may be used to clarify an ambiguous insurance policy, and Wisconsin courts will not distort a policy to cover risks that the insurer did not

contemplate and for which it has not been paid. *Coppins v. Allstate Indem. Co.*, 857 N.W.2d 896, 904 (Wis. Ct. App. 2014).

Here, even if the policy's medical-certificate requirement were ambiguous, Schmutzler's insurance application resolves the ambiguity. Schmutzler listed himself on the application as the one authorized pilot of the Cessna and indicated that he had an FAA medical certificate. Schmutzler initialed a section called "Minimum Pilot Requirements," which clearly states that "there is no coverage" under the policy unless the Cessna's pilot is both "designated" on the application and has "the certificates … indicated" and is "properly qualified for the flight involved." Thus, the application makes clear that any pilot flying the Cessna, including Schmutzler, must have an FAA medical certificate, and no reasonable jury would find otherwise on the present record. *See Bos. Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urb. Dev.*, 768 F.2d 5, 8 (1st Cir. 1985) (stating that the interpretation of an ambiguous contract may be taken away from the jury where the extrinsic evidence is "so one-sided that no reasonable person could decide the contrary").

## B. Whether Wis. Stat. § 631.11(3) Applies

Jadair next contends that, even if the medical-certificate exclusion applies to its claim, the claim must be covered under Wis. Stat. § 631.11(3). That provision states:

> No failure of a condition prior to a loss and no breach of a promissory warranty constitutes grounds for rescission of, or affects an insurer's obligations under, an insurance policy unless it exists at the time of the loss and either increases

> the risk at the time of the loss or contributes to
> the loss.

Jadair argues that, under this statute, American National cannot withhold coverage absent some showing that Schmutzler's failure to obtain a medical certificate increased American National's risk or otherwise contributed to the accident. And American National cannot make this showing, Jadair argues, because it is undisputed that the accident was caused by a mechanical problem with the Cessna, not a medical problem with Schmutzler.

The problem with Jadair's argument is that § 631.11(3) does not apply here. The statute only applies to cases involving the "failure of a condition" or the "breach of a promissory warranty." In *Fox v. Catholic Knights Insurance Society*, the Wisconsin Supreme Court treated these terms as largely synonymous and held that § 631.11(3) only applies to conditions subsequent. 665 N.W.2d 181, 190 (Wis. 2003).

But the policy's medical-certificate requirement is not a condition subsequent. Rather, as we explained above, it is an *exclusion* of coverage in cases where the requirement is not satisfied.

Wisconsin courts have long recognized the difference between exclusions and conditions subsequent. While conditions subsequent (and warranties) provide for the avoidance of liability for a covered loss if they are breached, exclusions declare that there never *was* coverage for a particular loss in the first place. *Bortz v. Merrimac Mut. Ins. Co.*, 286 N.W.2d 16, 19–21 (Wis. Ct. App. 1979); *see also McCoy v. Nw. Mut. Relief Ass'n*, 66 N.W. 697, 699 (Wis. 1896) (holding that conditions are subject to waiver and estoppel while

exclusions are not); *Maxwell v. Hartford Union High Sch. Dist.*, 814 N.W.2d 484, 491–92 (Wis. 2012) (same). As we have seen, the policy's medical-certificate requirement operates as an exclusion: it "'limits the scope of coverage,' 'tak[es] out … events otherwise included within the defined scope of coverage,' and 'expressly refuse[s] to assume a specific hazard or risk.'" *Kutchera v. State Farm Fire & Cas. Co.*, 560 F. Supp. 3d 1242, 1248 (W.D. Wis. 2021) (quoting *Bortz*, 286 N.W.2d at 19–21). Because the medical-certificate requirement is an exclusion and not a condition subsequent, § 631.11(3) has no application to the present case. *Fox*, 665 N.W.2d at 190; *see also Kutchera*, 560 F. Supp. 3d at 1246–50 (holding that § 631.11(3) does not apply to exclusions, given Wisconsin courts' longstanding distinction between exclusions and conditions).

## C. Jadair's Motion to Certify a Question to the Wisconsin Supreme Court

Finally, Jadair moves to certify the following question to the Wisconsin Supreme Court:

> Does Wis. Stat. § 631.11(3) require that the insurer prove a causal connection under an aircraft insurance policy between the accident and the failure of the insured to comply with federal aviation safety-related regulations?

"Our rules permit us to certify state-law questions to a state supreme court when the answer will control the outcome of a case and the state court accepts such certifications." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1165 (7th Cir. 2021) (citing 7th Cir. R. 52(a)). But just because we can certify a question does not mean that we should. Unneeded certification orders waste the time of the litigants

who appear before us. They also burden our esteemed colleagues in the state supreme courts and endanger the important purposes of federalism. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554, 587 (9th Cir. 2023) (Bea, J., dissenting) (stating that unwarranted certification requests "deplete our reservoir of comity" with the state supreme courts). So we will only certify a state-law question when doing so is particularly necessary.

In determining whether a particular question warrants certification, we consider several factors. Most importantly, "we must find ourselves 'genuinely uncertain' about the answer to the state-law question before considering certification." *Cothron*, 20 F.4th at 1166 (quoting *In re Hernandez*, 918 F.3d 563, 570 (7th Cir. 2019)). The question this case raises does not meet that test, and so we will not waste the Wisconsin Supreme Court's time with it.

Jadair essentially asks the Wisconsin Supreme Court to determine the scope of § 631.11(3)'s applicability. But the court already did this in *Fox*, when it held that the statute only applies to conditions subsequent. 665 N.W.2d at 190. As we have explained, the policy's medical-certificate requirement is not a condition subsequent, so the statute does not apply. Jadair urges that *Fox* was not decided in the context of aviation insurance, but we do not see why that matters. Section 631.11(3), on its face, applies to all insurance policies, and Jadair has given us no reason to believe that the Wisconsin Supreme Court would interpret the statute differently for different types of insurance.[7] While *Fox* is not

_____

[7] Jadair spends a significant portion of its briefing summarizing the varying approaches other states have taken regarding whether and when an aviation insurer must prove a causal connection between an insured's

factually identical to this case, we are "confident in proceeding under the guidance" that it provides. *Bernstein v. Bankert*, 733 F.3d 190, 221 (7th Cir. 2013). Accordingly, Jadair's motion to certify its question is denied.

## III.    CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED, and Jadair's motion to certify a question to the Wisconsin Supreme Court is DENIED.

---

violation of a particular provision of a policy and a claimed loss. But the laws of states other than Wisconsin provide little help here.