In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2841

GORDON GREEN,

*Debtor-Appellant*,

*v.*

DAVID P. LEIBOWITZ,

*Trustee-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-01402 — **Sharon Johnson Coleman**, *Judge*.

ARGUED MAY 30, 2024 — DECIDED JULY 16, 2024

Before ST. EVE, KIRSCH, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. This appeal is both broad and narrow. It is broad in that we must consider three areas of law—the Bankruptcy Code, the Internal Revenue Code, and Illinois state law—to answer the question presented. It is narrow in that the question we must answer requires statutory interpretation of a single phrase. Here, Debtor-Appellant Gordon Green argues that a registered retirement savings plan organized under Canadian law qualifies for an exemption from his

bankruptcy estate under an Illinois statute exempting accounts "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code." Trustee-Appellee David P. Leibowitz disagrees, as did the bankruptcy court and district court, both of which denied the exemption. Because we find that Green's account, while intended for use in his retirement, is not a tax-qualified retirement plan under applicable provisions of the Internal Revenue Code, we affirm.

## I. Background

On May 11, 2021, Green filed for Chapter 7 Bankruptcy. His bankruptcy petition listed the "Sun Life: Life Income Fund" (the Sun Life Fund), a Registered Retirement Savings Plan organized under Canadian law, as one of his assets. Green sought to exempt the entire balance of this fund pursuant to 735 ILCS 5/12-1006 (Section 12-1006), which exempts assets "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986." 735 ILCS 5/12-1006(a)(1).

The Trustee objected to the exemption on the grounds that, because the Sun Life Fund was organized under the laws of Canada rather than the United States, it was ineligible for the exemption even if it was intended to be a retirement plan. The bankruptcy court sustained the objection, holding that a "retirement plan" must be a plan organized under 26 U.S.C. § 401(a), which requires that the trust be created or organized in the United States.[1]

---

[1] 26 U.S.C. §§ 101 *et seq.* covers the Internal Revenue Code. Going forward, this opinion will refer to any provisions of this Title as "I.R.C."

Green appealed. Rejecting the bankruptcy court's holding that Section 12-1006 incorporates a country-of-origin requirement, the district court nonetheless found that the Sun Life Fund was not a tax-qualified retirement plan under the Internal Revenue Code. Accordingly, the district court affirmed the denial of the exemption. Once again, Green appeals.

## II. Analysis

"A debtor's entitlement to a bankruptcy exemption is a question of law," *In re Hernandez*, 918 F.3d 563, 566 (7th Cir. 2019) (quoting *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993)), which we review de novo, *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011).

Filing for bankruptcy creates an estate comprised of a debtor's legal and equitable interests in property. 11 U.S.C. § 541(a). In turn, this estate is administered by a bankruptcy trustee and used to satisfy outstanding debts. 11 U.S.C. § 704(a). Yet not all property necessarily enters the estate— Section 522 of the Bankruptcy Code allows debtors to exempt certain property and protect it from creditors' claims. See 11 U.S.C. § 522. So, for instance, § 522(b)(3) of the Bankruptcy Code allows debtors to exempt from the bankruptcy estate retirement funds that are in accounts governed by certain provisions of the Internal Revenue Code.

Ordinarily, debtors can select exemptions provided by either federal law or state law. *In re O'Malley*, 601 B.R. 629, 644 (Bankr. N.D. Ill. 2019) (citing *In re Dzielak*, 435 B.R. 538, 545–46 (Bankr. N.D. Ill. 2010)). States, however, can "opt out" of the federal exemption statute. *In re Rosenzweig*, 245 B.R. 836, 839 (Bankr. N.D. Ill. 2000); 11 U.S.C § 522(b). Illinois has opted out, so "[e]xemptions for debtors in Illinois rest on state law"

and not on any of the federal exemptions (including § 522(b)(3)). *Matter of Burciaga*, 944 F.3d 681, 683 (7th Cir. 2019) (citing 735 ILCS 5/12-1201).

In this case, Green seeks an exemption under Illinois law, specifically Section 12-1006 ("Exemption for retirement plans"). This provision reads, in relevant part:

> (a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, distress for rent, and seizure for the satisfaction of debts if the plan (i) *is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986,* as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.
>
> (b) "Retirement plan" includes the following:
>> (1) A stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;
>> (2) A government or church retirement plan or contract;
>> (3) An individual retirement annuity or individual retirement account; and

> > (4) A public employee pension plan cre-
> > ated under the Illinois Pension Code,
> > as now or hereafter amended.

735 ILCS 5/12-1006 (emphasis added).

This case presents the question of what falls under plans "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code…." To answer this question, which involves the interpretation of an Illinois statute, we must apply Illinois's rules of statutory construction. *Hernandez*, 918 F.3d at 569. In Illinois, "[t]he primary goal of statutory construction" is "to ascertain and give effect to the intention of the legislature." *Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.*, 6 N.E. 3d 128, 134–35 (Ill. 2014). "Legislative intent is best determined from the language of the statute itself, which if unambiguous should be enforced as written," although, if ambiguous, courts should also consider "the reason for the law, the problems to be remedied, and the objects and purposes sought" when giving effect to statutory intent. *Dawkins v. Fitness Int'l, LLC*, 210 N.E. 3d 1184, 1190 (Ill. 2022).

Somewhat complicating our analysis, however, is the fact that the Internal Revenue Code does not specifically define "retirement plan," at least for this purpose, or explicitly list out which provisions cover "retirement plans." Similarly, Section 12-1006—likely for good reason—omitted any specific statutory reference, opting instead for the general reference to "applicable provisions" of the Internal Revenue Code.

Courts addressing Section 12-1006 have consistently found that only "tax-qualified retirement plans" under the Internal Revenue Code are exempt. See *In re West*, 507 B.R. 252,

259 (Bankr. N.D. Ill. 2014) ("To qualify for the Illinois exemption, the retirement plan … must come within the Internal Revenue Code provisions for tax qualified retirement plans."); *O'Malley*, 601 B.R. at 646 (same). Both parties recognize that the question for this appeal, therefore, is whether the Sun Life Fund is a "tax-qualified retirement plan" under "applicable provisions of the Internal Revenue Code."[2]

At least one Illinois court has indicated that we should look to § 522(b)(3) of the Bankruptcy Code for guidance in determining whether a given plan is a tax-qualified retirement plan. *In re Marriage of Branit*, 41 N.E. 3d 518, 523–24 (Ill. App. Ct. 2015); see also *Malone v. Bankhead Enter., Inc.*, 125 F.3d 535, 539 (7th Cir. 1997) (turning to Illinois precedent for guidance in interpreting an Illinois statute). Section 522(b)(3) of the Bankruptcy Code exempts "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522(b)(3)(C). While *Branit* addressed the question of whether an inherited individual retirement account (IRA) was exempt under Section 12-1006, it noted more generally that "[t]he fact that the Illinois legislature intended section 12-1006 to be used in bankruptcy cases indicates that it was meant to

---

[2] Briefly, the district court rejected the bankruptcy court's position that tax-qualified retirement plans are limited only to those plans which fall under I.R.C. § 401(a), thereby imposing a country-of-origin requirement. The Trustee does not contest this holding on appeal. Moreover, the bankruptcy court's reading of Section 12-1006 appears to directly conflict with Section 12-1006's reference to "provisions," plural, and ignores that courts have granted the exemption when a retirement plan qualifies under other provisions of the Internal Revenue Code. See, e.g., *In re Ritter*, 190 B.R. 323, 326 (Bankr. N.D. Ill. 1995).

be the Illinois equivalent of [§ 522]." 41 N.E.3d at 523. Accordingly, the *Branit* court "hew[ed] to the established meaning of [§ 522] in interpreting whether the term 'retirement plan' under section 12-1006 of the Code includes inherited IRAs." *Id.* at 523–24.

If Section 12-1006 mirrors § 522, as *Branit* suggests, then the types of retirement plans intended to be exempted should receive analogous, even if not necessarily identical, tax treatment as those types of tax treatments provided in the provisions outlined in § 522(b)(3). Put another way, § 522(b)(3) can be seen as a guide as to what provisions of the Internal Revenue Code would be *applicable* provisions for purposes of Section 12-1006. Notably, the provisions mentioned in Section 522(b)(3) explicitly reference plans intended for use in retirement. For instance, I.R.C. § 401 covers "[q]ualified pension, profit-sharing, and stock bonus plans," and corresponds to the first three types of assets listed in Section 12-1006(b)(1) (which says that a "retirement plan" includes "a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement"). Similarly, I.R.C. § 403 includes tax-sheltered annuity plans that function as retirement plans for school and non-profit employees, I.R.C. § 408 covers IRAs, I.R.C. § 408A covers Roth IRAs, and I.R.C. § 414 covers employer benefit plans. Stated differently, the provisions themselves make it clear that they regulate the creation and governance of different forms of retirement plans.

Here, Green does not contend that the Sun Life Fund falls under any of the provisions listed in § 522(b)(3). Instead, Green proposes that the Sun Life Fund is tax-qualified because it is subject to special tax treatment under I.R.C. § 404A, which allows employers to deduct certain contributions to

qualified foreign plans.[3] I.R.C. § 404A(a). These contributions, in turn, appear to be required to relate to retirement in order to be eligible for this deduction. See I.R.C. § 404A(b)(5) (noting that contributions shall only be taken into account if paid to a trust meeting § 401(a)(2)'s requirements, to a retirement annuity, or to a participant or beneficiary).

Although this weighs in favor of Green's argument, there are still material differences between § 404A and the provisions included in § 522(b)(3). Most importantly, each of the provisions in § 522(b)(3) contains detailed instructions as to the structure of the plan, the timing of the plan, the eligibility requirements of the plan, the treatment of proceeds from the plan, and so on. See, e.g., § 401(a) (enumerating 38 criteria necessary for qualifying plans). Conversely, § 404A contains no such criteria, presumably because foreign law would govern the actual structure of the plans. Because of this, we cannot find that just because a plan is qualified for purposes of a tax deduction under § 404A, it therefore "qualifies" as a *retirement plan* under § 404A for purposes of Section 12-1006. Indeed, as the district court noted, § 404A defines "qualified foreign plans," not retirement plans. See I.R.C. § 404A(e) (defining a qualified foreign plan as "any written plan of an employer for deferring the receipt of compensation" that satisfies three specified criteria, none of which explicitly reference retirement). Put another way, that the Sun Life Fund is a "retirement plan" is divorced from any criterion set out in the Internal Revenue Code. Rather, it is considered a retirement plan *separately* from any criteria present in the Internal Revenue

---

[3] This dispute therefore centers around what types of plans may be eligible for an exemption under Section 12-1006, not whether the Sun Life Fund was or was not "intended in good faith" to qualify as such a plan.

Code, and *then* is subject to favorable tax treatment pursuant to § 404A.[4]

Green resists this conclusion by suggesting that a "retirement plan" is defined not by provisions of the Internal Revenue Code, but by the common definition of the term. But adopting this position would essentially read out the latter half of Section 12-1006's statutory text, that a plan must qualify "under applicable provisions of the Internal Revenue Code." When interpreting an Illinois statute, "[e]ach word, clause, and sentence … must be given a reasonable meaning, if possible, and should not be rendered superfluous." *State ex rel. Leibowitz v. Fam. Vision Care, LLC*, 181 N.E.3d 790, 797 (Ill. 2020). Here, Section 12-1006 explicitly ties an account's eligibility for an exemption to the Internal Revenue Code, specifically, whether it is intended "to qualify as a retirement plan *under applicable provisions*." In other words, "under" modifies "qualify" in the phrase, making the account's governance by provisions of the Internal Revenue Code the reference point to determine whether Section 12-1006's exemption applies.

Simply put, the Illinois legislature said what it said. And it chose to include the phrase "under applicable provisions of the Internal Revenue Code." See 735 ILCS 5/12-1006(a). Moreover, in the very next clause, the Illinois legislature provided specific examples of what is included in the term "retirement

---

[4] We briefly note that, at oral argument, Green's counsel represented (and the Trustee did not dispute) that, in addition to any tax deductions an employer might take under § 404A, Green could also defer his own income taxes on his contributions to the Sun Life Fund. While neither party clearly explains the precise mechanism by which Green could defer his income taxes, the authority to do so appears to arise under the U.S.-Canada Tax Treaty, and without reference to the Internal Revenue Code.

plan." See *id.* at 12-1006(b). Had it wanted, the Illinois legislature could have relied solely on its list of what the term "retirement plan" includes as provided in Section 12-1006(b), without reference to the Internal Revenue Code, in determining the scope of the exemption. Or, relatedly, the Illinois legislature could have explicitly defined the term "retirement plan" and indicated that the funds would have to meet that definition and obtain some form of special tax treatment in order to qualify for the exemption. The decision not to write the statute in this way was one for the Illinois legislature, and is not one which a court should undo.

On this point, we find *In re Jokiel*, an earlier decision from the bankruptcy court, persuasive even if factually distinguishable. 453 B.R. 743 (Bankr. N.D. Ill. 2011). There, the bankruptcy court was asked to determine whether a supplemental executive retirement plan which did not qualify for favorable tax treatment under the Internal Revenue Code was eligible for the exemption under Section 12-1006. *Id.* at 745–46. The debtor claimed that because Section 12-1006 does not specifically refer to any section of the Internal Revenue Code, it meant to refer to the term "retirement plan" generally, regardless of whether it qualified for special tax treatment. *Id.* at 747. Green's position is similar—in his view, it is enough that the Sun Life Fund was meant for retirement, regardless of whether it was created in accordance with any Internal Revenue Code provision addressing retirement plans. But, as *Jokiel* notes, Section 12-1006 "does not state that it exempts retirement plans 'as defined in' the Internal Revenue Code." *Id*. Rather, it "exempts retirement plans that are intended in good faith to 'qualify' *under the applicable provisions of the tax code*." *Id.* (emphasis added). And, as we have indicated, that a given account may receive favorable tax treatment generally does

not necessarily mean that it "qualifies" as a retirement plan under the Internal Revenue Code.

*Jokiel* also provides a convincing analysis of why Section 12-1006 refers generally to the Internal Revenue Code rather than listing specific provisions like § 522(b)(3). As *Jokiel* notes, the "Internal Revenue Code is complex and changes frequently," and it would be a heavy lift for the Illinois legislature to monitor changes in specific sections and then timely amend the state statute. *Id.* at 749. Considering this, we cannot find that the mere lack of reference to any specific provisions is reason enough to rely only on the general definition of retirement plan, without consideration of the Internal Revenue Code, to determine Section 12-1006's applicability.

Perhaps revealingly, Green's argument primarily relies not on case law addressing Section 12-1006, but on a Supreme Court decision interpreting the Bankruptcy Code's exemptions. For Green, the operative case is the Supreme Court's decision in *Clark v. Rameker*, which defined the term "retirement funds" for purposes of the Bankruptcy Code. 573 U.S. 122, 127 (2014). But *Clark* involved a different issue. Specifically, in *Clark* there was no question that the account—an inherited IRA—was subject to tax treatment under one of § 522's listed provisions.[5] *Id.* at 125. Rather, the issue in *Clark* was whether the funds themselves could be considered "retirement funds" within the meaning of the statute. *Id.* at 126. The reverse is true here—the issue is whether the Sun Life Fund is "tax-qualified," not whether it is retirement account— that is, an account "set aside for the day when [Green] stops

---

[5] Inherited IRAs are governed by I.R.C. § 408. See I.R.C. §§ 408(d)(3)(C).

working." *Id.* at 127. Thus, *Clark's* relevance to the issue raised in this appeal is limited.

Finally, Green makes much of the fact that "personal property exemption statutes should be liberally construed." *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985). But that Section 12-1006 should be "liberally construed" does not mean "that we must interpret section 12-1006 in such a way as to defeat the intent of the legislature." *Branit*, 41 N.E.3d at 525. As the above analysis makes clear, to adopt Green's interpretation of Section 12-1006 would do just that. Liberal construction, therefore, will not justify the exemption on its own.[6]

### III. Conclusion

For the reasons stated, we affirm.

---

[6] In addition to this appeal, Green has moved to certify "the question of whether the Sun Life Fund is exempt pursuant to Section 1006" to the Illinois Supreme Court pursuant to Circuit Rule 52. "[W]e certify questions under [Rule 52] only if we are 'genuinely uncertain about a question of state law that is key to a correct disposition of the case.'" *Nat'l Police Ass'n, Inc. v. Gannett Co.*, 81 F.4th 719, 726 (7th Cir. 2023). To be sure, this appeal raises a question of state law that is key to the disposition of the case. But, as the foregoing analysis demonstrates, we are not "genuinely uncertain" as to its resolution. *Id.* Accordingly, we see no need to certify this question to the Illinois Supreme Court and deny that motion. See *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 557 (7th Cir. 2023) (holding certification inappropriate where the court was not "genuinely uncertain" about the answer) (quotation omitted)).